**Lori G. McKENZIE, Plaintiff–Appellant,**

v.

**RENBERG'S INC., and Robert Renberg, Defendants–Appellees.**

No. 94–5197.

United States Court of Appeals,
Tenth Circuit.

Sept. 4, 1996.

James C. Hodges of Eller & Detrich, Tulsa, Oklahoma (Charles L. Richardson and Brad Smith of Richardson & Stoops, with him on the brief), for Plaintiff/Appellant.

Larry D. Henry of Arrington, Kihle, Gaberino & Dunn, Tulsa, Oklahoma (Patrick W. Cipolla, with him on the brief), for Defendants/Appellees.

Before SEYMOUR, Chief Judge, TACHA and EBEL, Circuit Judges.

EBEL, Circuit Judge.

Plaintiff–Appellant Lori G. McKenzie brought this action against her former employer, Renberg's Inc., and its president, Robert Renberg (collectively "defendants"), asserting claims for retaliatory discharge in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3), and wrongful discharge in violation of Oklahoma public policy. The district court dismissed McKenzie's state law wrongful discharge claim prior to trial under Fed.R.Civ.P. 12(b)(6). McKenzie received a favorable jury verdict on her retaliation claim, but the district court thereafter entered judgment as a matter of law for defendants. McKenzie now appeals these two rulings.[1] We have jurisdiction under 28 U.S.C. § 1291 and we affirm.[2] We hold that McKenzie did not engage in protected activity under § 215(a)(3) when, in her capacity as personnel director, she undertook to advise Renberg's that its wage and hour policies were in violation of the FLSA.

## BACKGROUND

Renberg's, Inc. ("the company") hired McKenzie as a receptionist in July 1984. She was promoted to Assistant Personnel Director in October 1984, and in May 1985, she became the company's Personnel Director. As Personnel Director, McKenzie was responsible for monitoring compliance with state and federal equal employment opportunity laws, wage and hour laws, and other laws regulating the workplace.

In August 1991, a co-worker of McKenzie, Marsha McElroy, attended a seminar on wage and hour laws and returned with various informational materials. McElroy gave these materials to McKenzie, who, after reviewing them, became concerned that certain employees of the company were not receiving proper compensation for working overtime. McKenzie discussed the matter with McElroy, and then decided to disclose her concerns to the company attorney, Steve Andrew. McKenzie and McElroy met with Andrew on September 4, 1991, and later that same day, McKenzie also discussed the wage and hour problem with Robert Renberg ("Renberg"), the company president. Sixteen days later, on September 20, 1991, McKenzie was terminated by Renberg.

Believing she had been retaliated against for reporting the company's possible wage and hour violations, McKenzie filed suit in the United States District Court. In her complaint, McKenzie asserted an FLSA retaliatory discharge claim under 29 U.S.C. § 215(a)(3). This statutory provision makes it unlawful for an employer

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3). McKenzie also asserted a state law claim for wrongful discharge in violation of Oklahoma public policy, *see Burk v. K–Mart Corp.*, 770 P.2d 24 (Okla.1989).[3] The district court dismissed the *Burk* public policy claim under Fed.R.Civ.P. 12(b)(6). The FLSA retaliation claim was tried to the jury.

The parties vigorously disputed the facts at trial. McKenzie testified that the defendants were not very open to her concerns about the company's possible FLSA violations. According to McKenzie's testimony,

---

**1.** McKenzie also appeals: (1) the district court's refusal to enter judgment on the emotional distress and punitive damages awarded her by the jury on the FLSA claim; (2) the reduction of her FLSA back pay award; and (3) the denial of front pay. However, we need not reach those issues.

**2.** The Court also has before it the defendants' motion for sanctions. We have considered the arguments therein and hereby deny the motion.

**3.** McKenzie also brought a state law claim for intentional infliction of emotional distress and a federal claim of sex discrimination under Title VII. The emotional distress claim was dismissed prior to trial in an order from which McKenzie does not appeal. McKenzie's Title VII claim apparently was abandoned prior to trial (*see* District Court's Pretrial Order, Aplt.App. at 1–2) and therefore we do not address it in this appeal.

Andrew seemed not to understand her concerns and would not examine the seminar materials she had brought to the September 4, 1991 meeting. McKenzie testified that at one point in the meeting, Andrew drew a line on a legal pad—apparently representing the symbolic line between "right" and "wrong"—and indicated to McKenzie that he was not afraid to cross that line. After the meeting with Andrew, McKenzie spoke with Renberg. McKenzie testified that Renberg also seemed indifferent to the wage and hour problem. She had the impression that Renberg had already spoken to Andrew about the FLSA issue. McKenzie testified that after these meetings she began to feel uneasy and feared for her job.

McKenzie testified that her uneasiness continued during the next few weeks, as Andrew would not return her repeated phone calls. On September 20, 1991, Renberg came to McKenzie's office and fired her. McKenzie testified that Renberg's only stated reason for firing her was his "loss of confidence" in her. McKenzie later discovered that she had been under investigation by an internal security officer since September 12, 1991, eight days after she first reported the FLSA violations to Andrew. Renberg testified that he had personally requested the investigation of McKenzie, and that McKenzie was the only employee he specifically remembered ever having asked to be investigated. Finally, McKenzie testified that she had received no warnings or complaints from the defendants about her performance, despite a general company policy that required progressive counseling about performance problems before termination.

The defendants disputed much of McKenzie's testimony at trial. Andrew testified that the company did not have a progressive discipline system in place, nor did it have an employee's manual at the time of McKenzie's discharge. In addition, the defendants sought to rebut McKenzie's claim of retaliation by offering evidence that Marsha McElroy, who attended the FLSA seminar and

who also raised the possible FLSA violations with Andrew, was not terminated.

Renberg denied that McKenzie's discharge was in retaliation for her protected FLSA activity. Renberg testified that he fired McKenzie for two legitimate reasons: (1) for disclosing confidential information in her role as personnel director;[4] and (2) for notarizing a "contract" between two company employees for sexual favors. The "contract," which was entered into by Brenda Jagels, an on-call sales clerk, and David Childers, a company vice-president, provided in relevant part as follows:

> AREA OF CONTENTION: **Renberg's Christmas Bonus**
>
> TERMS OF THE AGREEMENT: Should Christmas bonuses not be paid in their usual manner to the employees of Renberg's Inc., a company operating in Tulsa, Oklahoma, then David Childers will provide Brenda Jagels with the following:
>
> (1) Fendi Parfum 1.4 oz.
>
> (1) Fendi EDT
>
> (1) Fendi Body Lotion or Creme
>
> (1) Erno Laszlo Eye Creme
>
> However, should Christmas bonuses be paid then Brenda Jagels will provide David Childers with a very special and provocatively intimate evening; time, place and duration to be negotiated.
>
> PAYMENT: Made on or before December 25, 1989.
>
> Brenda, this letter is intended to be a binding contract. Please signify your agreement with the foregoing provisions by signing below and returning one copy for my file.

At trial, McKenzie admitted that she had notarized the sex contract, but stated that she had neither read it nor was aware of its content when she notarized it. McKenzie also admitted that she had made a mistake by notarizing the contract.

The trial was conducted in three stages, with the question of FLSA liability decided first, followed by the jury's determination of back pay and compensatory damages, and

---

**4.** The alleged breaches of confidentiality involved McKenzie disclosing the names of company employees suspected of criminal activity and divulg-

ing the impending demotion of a department manager.

finally, of punitive damages. After the liability phase, the jury concluded that the defendants' asserted non-retaliatory reasons for discharging McKenzie were pretextual and returned a special interrogatory finding that McKenzie was terminated in retaliation for reporting her belief that Renberg's was in violation of the Fair Labor Standards Act. After the two damages phases of the trial, the jury returned verdicts awarding McKenzie $100,000 in back pay, $175,000 in emotional distress damages, and $50,000 in punitive damages. The district court deferred entry of judgment on the jury's verdict and ordered further briefing from the parties on the question whether emotional distress and punitive damages were authorized under the FLSA. On July 15, 1994, the district court issued its findings of fact and conclusions of law, pursuant to which the court: (1) reduced McKenzie's back pay award to $50,983.04; (2) granted McKenzie an additional equal amount of $50,983.04 as liquidated damages; (3) denied McKenzie's request for front pay under the equitable doctrine of "unclean hands"; and (4) (apparently) ruled that emotional distress and punitive damages were not available under the FLSA as a matter of law.

After the district court entered a corresponding judgment in favor of McKenzie, the defendants filed a Motion for Judgment as a Matter of Law under Fed.R.Civ.P. 50, or in the alternative, a Motion for New Trial under Fed.R.Civ.P. 59. The district court granted the Motion for Judgment as a Matter of Law, and ruled that the Motion for New Trial was moot. McKenzie now appeals.

## DISCUSSION

### I. *Motion for Judgment as a Matter of Law*

■ McKenzie first challenges the district court's decision to grant the defendants judgment as a matter of law on her FLSA retaliation claim. We review *de novo* the grant or denial of a motion for judgment as a matter of law, applying the same legal standard as the district court. *Clark v. R.E.L. Prods., Inc.*, 972 F.2d 317, 317 (10th Cir. 1992). In conducting this review, we must determine whether, " 'viewing the evidence in

the light most favorable to the nonmoving party, the evidence and the inferences to be drawn from it are so clear that reasonable minds could not differ on the conclusion.' " *Pytlik v. Professional Resources, Ltd.*, 887 F.2d 1371, 1380 (10th Cir.1989) (quoting *Guilfoyle v. Missouri, Kansas & Texas R.R. Co.*, 812 F.2d 1290, 1292 (10th Cir.1987)). Judgment as a matter of law may be granted under Fed.R.Civ.P. 50 "only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." *FDIC v. United Pac. Ins. Co.*, 20 F.3d 1070, 1079 (10th Cir.1994). Applying this standard, we affirm the judgment of the district court, although we do so on a different ground than that relied upon below.

#### A.

■ The Tenth Circuit applies a "motivating factor" analysis to claims of retaliatory discharge under § 215(a)(3) of the FLSA: "When the 'immediate cause or motivating factor of a discharge is the employee's assertion of statutory rights, the discharge is discriminatory under § 215(a)(3) whether or not other grounds for discharge exist.' If retaliation is not the motivating factor, then the discharge is not unlawful." *Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir.) (quoting *Martin v. Gingerbread House, Inc.*, 977 F.2d 1405, 1408 (10th Cir.1992)), *cert. denied*, — U.S. —, 116 S.Ct. 2552, 135 L.Ed.2d 1071 (1996). The motivating factor test is equivalent to a "but for" inquiry—a discharge is unlawful under § 215(a)(3) "only if it would not have occurred *but for* the retaliatory intent." *Martin*, 977 F.2d at 1408 n. 4.

■ We believe the jury verdict rendered in this case is dispositive of the retaliation issue. At trial, the jury was presented with McKenzie's evidence of retaliation, as well as the defendants' evidence regarding their asserted non-retaliatory reasons for the discharge. The trial judge correctly instructed the jury that McKenzie bore the burden of proving that her FLSA activity was the "motivating factor" in the termination decision and that she would not have been discharged

"but for" the defendants' retaliatory intent. *See Martin,* 977 F.2d at 1408 & n. 4. In this regard, the jury was told that if it found McKenzie would have been terminated regardless of her FLSA activity, then it was required to find in favor of the defendants. *See Reich v. Davis,* 50 F.3d 962, 966 (11th Cir.1995) (holding that under the "but for" test, a retaliation plaintiff cannot prevail if she "would have suffered exactly the same adverse action even if [she] had not engaged in FLSA activities"). After being given these instructions, the jury returned a special interrogatory finding that McKenzie was terminated because of her FLSA activity. The jury therefore rejected the defendants' asserted non-retaliatory reasons and found that unlawful retaliation was the "but for" cause of McKenzie's discharge.[5]

Despite the jury's express finding of retaliatory intent, the district court granted the defendants' motion for judgment as a matter of law. The district court reasoned that because the defendants would have been justified in discharging McKenzie for notarizing the sex contract, they could not be held liable under the FLSA even if they had unlawfully retaliated against McKenzie. In the district court's view, the sex contract provided an independent lawful justification for McKenzie's discharge which trumped any retaliatory motive on the defendants' part:

> [W]hen all of the evidence is viewed in a light favorable to Plaintiff, and all reasonable inferences are granted thereto, the evidence is sufficient to submit the issue to the trier of fact.... However, the evidence regarding Plaintiff's participation in the written *quid pro quo* contract for sexual favors presents a different matter. If this nonpretextual reason standing alone would support employment termination, a judgment as a matter of law is appropriate even though a factual issue exists regard-

ing alleged retaliation pursuant to 29 U.S.C. § 215(a)(3).

(Aplt.App. at 37–38.)

■ Under the district court's approach, the dispositive question is whether the defendants would have been *justified* in terminating McKenzie for notarizing the sex contract. This approach, however, disregards both the jury's express findings of fact and the "but for" test of causation. Under the "but for" standard, only those employees "who would have suffered *exactly the same adverse action* even if they had not engaged in FLSA activities will be unprotected...." *Davis,* 50 F.3d at 966 (emphasis added). Thus, the mere existence of a non-retaliatory motive that would justify an employee's discharge does not absolve an employer of liability for a retaliatory employment decision; rather, the employer must *actually rely* on that nonretaliatory reason as the sufficient, motivating reason for the employment decision. As the Supreme Court recently stated, "proving that the same decision would have been justified ... is not the same as proving that the same decision would have been made." *McKennon v. Nashville Banner Pub. Co.,* — U.S. —, —, 115 S.Ct. 879, 885, 130 L.Ed.2d 852 (1995) (omission in original) (quotation omitted). In other words, an employer may not prevail "by offering a legitimate and sufficient reason for its decision if that reason did not motivate it at the time of the decision." *Price Waterhouse v. Hopkins,* 490 U.S. 228, 252, 109 S.Ct. 1775, 1791, 104 L.Ed.2d 268 (1989) (plurality opinion) (involving a mixed-motive situation). Here, the defendants were given the opportunity at trial to persuade the jury that McKenzie was terminated not for reporting her wage and hour concerns, but for notarizing the sex contract. The jury, however, was not convinced. The jury instead found that the "but for" cause of McKenzie's discharge was her FLSA activity, and that the defendant's asserted "sex contract" rationale was a pretext.

---

**5.** In its Findings of Fact and Conclusions of Law, the district court acknowledged the jury's rejection of the defendants' asserted non-retaliatory reasons:

> The jury found that the Plaintiff was willfully and intentionally retaliated against and terminated by Defendants on September 20, 1991,

because she had communicated good faith concerns regarding possible FLSA violations by Renberg's, Inc. *The jury concluded Defendants' proffered reasons for Plaintiff's termination were pretextual.*

Aplt.App. at 27–28 (emphasis added).

Given these findings of fact, it is immaterial whether the defendants would have been justified in discharging McKenzie for notarizing the sex contract, as the jury concluded she was not actually discharged for this reason.

### B.

The district court erred in another important respect as well. At trial, McKenzie argued that Renberg was not aware of the existence of the sex contract until after he terminated her, and thus could not have relied on the contract in making his decision. To support her argument, McKenzie offered into evidence a copy of the sex contract with a handwritten date of "10/7/91" in the upper right-hand corner—a date approximately three weeks *after* McKenzie was terminated. Renberg, on the other hand, testified that a copy of the document was discovered and turned over to him sometime prior to McKenzie's termination.[6] The district court avoided this potential factual complication by invoking the so-called "*Summers* doctrine." *See generally Summers v. State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700, 708 (10th Cir. 1988) (holding that an employer may avoid liability for a discriminatory discharge if, subsequent to the employee's discharge, the employer discovers evidence of wrongdoing that would have led to the employee's termination on lawful and legitimate grounds). In ruling on the defendants' motion for judgment as a matter of law, the district court applied *Summers* and reasoned that even if Renberg did not learn of the sex contract until after McKenzie's discharge, defendants nevertheless could rely on the sex contract to justify their termination decision.

While the district court's reasoning may have been consistent with our precedents at the time, the *Summers* doctrine has since been rejected. Shortly after the district court's decision in this case, the Supreme Court decided *McKennon v. Nashville Banner Pub. Co.*, —— U.S. ——, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). In *McKennon*, the Court specifically disapproved of our decision in *Summers* and held that an employer's after-acquired evidence of misconduct cannot operate to bar an employee's discrimination action. *See* —— U.S. at ——, 115 S.Ct. at 885 ("The employer could not have been motivated by knowledge it did not have and it cannot now claim that the employee was fired for the nondiscriminatory reason."). Thus, the district court's reliance on *Summers* was in error.

### C.

Notwithstanding the district court's errors, defendants urge us to affirm the judgment on two grounds not relied upon below. "An appellee may defend the judgment won below on any ground supported by the record." *In re Robinson*, 921 F.2d 252, 253 (10th Cir.1990); *see also United States v. Sandoval*, 29 F.3d 537, 542 n. 6 (10th Cir. 1994) (appellate court may " 'affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court' ") (quoting *Medina v. City and County of Denver*, 960 F.2d 1493, 1495 n. 1 (10th Cir.1992)). Defendants argue that judgment as a matter of law was properly granted in their favor because: (1) McKenzie's conduct was not protected activity under § 215(a)(3); and (2) McKenzie failed to present sufficient evidence at trial to support the jury's finding of retaliation. Because we agree with the first of these propositions, we need not reach the second.

Defendants argue that McKenzie's act of reporting her good faith concerns about the company's possible wage and hour violations was not sufficient to trigger the protections of § 215(a)(3).[7] According to defendants,

---

6. In his deposition, Renberg testified that he first was given a copy of the sex contract sometime between March and September of 1991. At trial, however, Renberg testified that he first saw the document just a few days before he fired McKenzie.

7. The instruction to the jury on protected activity included the following statement: "The parties have stipulated that plaintiff complained about practices she in good faith believed may have been unlawful under the Fair Labor Standards Act. The parties herein agree that good faith reporting or communicating concerns regarding possible FLSA violations is protected activity." (Jt.2d Supp.App., Tab A.) While this "stipulation" would appear to preclude defendants' from arguing on appeal that McKenzie did not engage

McKenzie was not asserting any rights under the FLSA but rather was merely performing her everyday duties as personnel director for the company. Section 215(a)(3) makes it unlawful for an employer

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3). Although this provision specifically lists the types of activities which are protected from retaliation, we have held that § 215(a)(3) also protects employees who articulate a good faith, though unproven, belief that the employer is violating their rights under the FLSA. *Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 387 (10th Cir.1984). We also have held that § 215(a)(3) "applies to the unofficial assertion of rights through complaints at work." *Id.*

■ Despite our expansive interpretation of § 215(a)(3), we have never held that an employee is insulated from retaliation for participating in activities which are neither adverse to the company nor supportive of adverse rights under the statute which are asserted against the company. Indeed, the contrary conclusion follows directly from our decision in *Love*, where we held that in order to be protected under § 215(a)(3), an employee need not file an official complaint or institute an FLSA proceeding, so long as the

employee makes a "good faith *assertion* of [one's] statutory rights." 738 F.2d at 387 (emphasis added); *see also EEOC v. Romeo Community Schools.*, 976 F.2d 985, 989 (6th Cir.1992) (per curiam) ("The *Love* Court held that it is the assertion of statutory rights that is the triggering factor, not the filing of a formal complaint. This view is in accord with other circuits.") (collecting cases). Thus, it is the assertion of statutory rights (*i.e.*, the *advocacy* of rights) by taking some action adverse to the company—whether via formal complaint, providing testimony in an FLSA proceeding, complaining to superiors about inadequate pay, or otherwise—that is the hallmark of protected activity under § 215(a)(3).

■ Here, McKenzie never crossed the line from being an employee merely performing her job as personnel director to an employee lodging a personal complaint about the wage and hour practices of her employer and *asserting* a right adverse to the company. McKenzie did not initiate a FLSA claim against the company on her own behalf or on behalf of anyone else. Rather, in her capacity as personnel manager, she informed the company that it was at risk of claims that might be instituted by others as a result of its alleged FLSA violations. In order to engage in protected activity under § 215(a)(3), the employee must step outside his or her role of representing the company and either file (or threaten to file) an action adverse to the employer, actively assist other employees in asserting FLSA rights,[8] or oth-

---

in protected activity, it is apparent from the colloquy between defense counsel and the trial judge that defendants neither agreed to this instruction nor entered into such a stipulation. Indeed, defendants repeatedly objected to the form of the protected activity instruction, and although the court overruled their objections, it did acknowledge on several occasions that the issue was preserved for appeal. *See, e.g.*, Jt.2d Supp.App. at 510 ("[U]nderstanding you're very much interested in preserving that point for purposes of the beyond here, that is for appellate purposes—and I understand that, and you've raised it . . . ."); *id.* at 511 ("[C]an't we stipulate under the theory that I'm submitting it to the jury, certainly preserving your right to say, Judge, you're wrong . . . ."); *id.* at 512 ("[G]iving you the right to preserve your objection . . . . and certainly preserving your right to keep your issue for purposes of appeal alive . . . ."). In light of

these statements, we do not deem the argument waived.

8. The Tenth Circuit has not addressed whether § 215(a)(3) protects actions taken by an employee on behalf of other employees. In Title VII cases, the "opposition" clause contained in that statute's anti-retaliation provision, 42 U.S.C. § 2000e–3(a), protects conduct by an employee who is not the direct victim of a practice made unlawful under Title VII, but who "opposes" such discrimination against others. *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir.1990); *see, e.g.*, *Eichman v. Indiana State Univ. Bd. of Trustees*, 597 F.2d 1104, 1107 (7th Cir.1979) (protecting a man who assisted a female co-worker in asserting her right to be free from sex discrimination); *Jones v. Lyng*, 669 F.Supp. 1108, 1121 (D.D.C.1986) (same). While the FLSA contains no similar "opposition"

erwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA. Here, McKenzie did none of these things. Indeed, McKenzie testified that her job responsibilities included participating in wage and hour issues. There is no evidence in the record to suggest that McKenzie was asserting any rights under the FLSA or that she took any action adverse to the company; rather, the record reflects that McKenzie's actions in connection with the overtime pay issue were completely consistent with her duties as personnel director for the company to evaluate wage and hour issues and to assist the company in complying with its obligations under the FLSA. McKenzie therefore lacks an essential ingredient of a retaliation claim; that is, she did not take a position adverse to her employer or assert any rights under the FLSA. Accordingly, McKenzie did not engage in activity protected under § 215(a)(3), and we affirm the judgment as a matter of law in favor of the defendants on this alternative ground. Because this ruling disposes of McKenzie's FLSA retaliation claim, we need not address McKenzie's arguments regarding front pay, back pay, or emotional distress and punitive damages: As McKenzie's liability claim fails, so must her claims for legal and equitable relief.

## II. Dismissal of McKenzie's State Law Wrongful Discharge Claim

McKenzie next argues that the district court erred in dismissing, for failure to state a claim, her state law tort claim for discharge in violation of Oklahoma public policy. We review *de novo* the district court's grant of a motion under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. *Roman*

clause, we assume, without deciding, that the language of § 215(a)(3) is sufficiently broad to encompass conduct taken on behalf of others. *See, e.g.,* 29 U.S.C. § 215(a)(3) (making it unlawful for an employer to retaliate against an employee "because such employee has filed *any complaint* or instituted or cause to be instituted *any proceeding* under [the FLSA], or has testified or is about to testify *in any such proceeding* . . . .") (emphasis added). Section 215(a)(3) does not explicitly require that the employee's protected conduct relate to the assertion of his or her *own* statutory rights.

*v. Cessna Aircraft Co.,* 55 F.3d 542, 543 (10th Cir.1995).

McKenzie's state law claim is predicated upon *Burk v. K–Mart Corp.,* 770 P.2d 24 (Okla.1989). In *Burk,* the Oklahoma Supreme Court carved out a narrow exception to the Oklahoma employment-at-will doctrine by recognizing a tort cause of action "where an employee is discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy." 770 P.2d at 29. McKenzie alleges that she was discharged for reporting her concerns that the company was not properly paying overtime pay to sales associates and department managers. Assuming this allegation is true,[9] McKenzie can prevail on her *Burk* claim only if she can show that Oklahoma has a clearly established public policy regarding maximum work hours and overtime pay.

McKenzie has not pointed us to any specific Oklahoma statute establishing a public policy of this sort. Moreover, we find no Oklahoma constitutional, statutory or decisional law which would require an employer such as Renberg's, Inc. to pay overtime compensation to its employees. The absence of any Oklahoma law on this subject is underscored by the fact that although the Oklahoma legislature has adopted the federal standards for minimum wages, *see* Okla. Stat. tit. 40 § 197.2 (making it unlawful for an employer in Oklahoma to "pay any employee a wage of less than the current federal minimum wage for all hours worked"), it has not adopted the FLSA standards governing maximum hours and overtime, *see* 29 U.S.C. § 207.

9. Because we are reviewing the sufficiency of the complaint, we must accept all well-pleaded allegations in the complaint as true and construe the allegations in the light most favorable to McKenzie. *Doyle v. Oklahoma Bar Ass'n,* 998 F.2d 1559, 1566 (10th Cir.1993). Thus, we assume that McKenzie was retaliated against for reporting her good faith belief that Renberg's was violating the FLSA overtime provisions.

We also reject McKenzie's argument that the comprehensive Oklahoma statutory scheme governing the employer/employee relationship establishes a clear and compelling public policy mandating the payment of overtime compensation. Of the entire body of Oklahoma statutory law governing the employment relationship, McKenzie directs our attention to only one specific provision mentioning overtime pay, Okla. Stat. tit. 40 § 165.1. Section 165.1 is the definitions section of the Oklahoma Protection of Labor Act and defines the term "wages" as "compensation owed by an employer for labor or services rendered, including salaries, commissions, holiday and vacation pay, *overtime pay*, severance or dismissal pay, bonuses and other similar advantages agreed upon between the employer and the employee...." Okla. Stat. tit. 40 § 165.1(4) (emphasis added). In light of the *Burk* court's admonition that the public policy exception be "tightly circumscribed" and reserved for violations of "established and well-defined public policy," 770 P.2d at 29, we believe section 165.1(4)'s passing reference to "overtime pay" is far too slender a reed upon which to base a public policy tort. Although it mentions overtime pay, section 165.1(4) does not prescribe a limit for maximum working hours, nor does it set forth a specific formula for calculating overtime pay.[10] The absence of any clearly articulated overtime pay policy in the Oklahoma statutory scheme suggests that the Oklahoma courts would not entertain a *Burk* claim founded upon a discharge for reporting an employer's failure to pay overtime.

Despite the lack of a well-defined state policy, McKenzie argues that her *Burk* claim is cognizable because it is predicated upon a public policy found in a combined regime of both state *and* federal law. McKenzie relies on two cases of the Oklahoma Supreme Court to support this argument, *Tate v. Browning–Ferris, Inc.*, 833 P.2d 1218 (Okla. 1992), and *Todd v. Frank's Tong Serv., Inc.*, 784 P.2d 47 (Okla.1989). In *Tate*, the court held that a plaintiff who alleged a discriminatory discharge in violation of the Oklahoma and federal anti-discrimination statutes stated a claim under *Burk*. 833 P.2d at 1222–25. In *Todd*, the court upheld a *Burk* claim where the plaintiff alleged that he had been discharged for refusing to operate a vehicle that did not comply with both state and federal safety regulations. 784 P.2d at 50.

We believe *Tate* and *Todd* are distinguishable from the case at bar. Unlike the present case, the alleged wrongful discharges in both *Tate* and *Todd* not only violated applicable federal law, but they also violated a mandate of state public policy clearly expressed in the Oklahoma statutes. In *Tate*, for instance, the plaintiff alleged he had been fired because of his race—an action contrary to both the federal policy expressed in Title VII, 42 U.S.C. § 2000e *et seq.*, and the state policy expressed in the Oklahoma anti-discrimination statute, Okla. Stat. tit. 25 § 1101 *et seq.* Similarly, in *Todd*, the plaintiff alleged he was unlawfully discharged for refusing to operate an unsafe vehicle in violation of the federal Surface Transportation Assistance Act, 49 U.S.C.App. § 2305 (recodified at 49 U.S.C.App. § 31105(a)), and for refusing to operate a vehicle that was not in compliance with state safety regulations, Okla. Stat. tit. 47 §§ 12–201, 12–301. Here, by contrast, McKenzie cannot direct our attention to any specific Oklahoma policy or statute mandating the payment of overtime compensation to private employees. The most she can do is allege a violation of the federal FLSA. We therefore affirm the dismissal of McKenzie's *Burk* public policy claim.[11]

---

10. Indeed, in those particular situations where the Oklahoma Legislature *has* mandated the payment of overtime to employees, it has provided the amount by statute. *See, e.g.,* Okla. Stat. tit. 40 § 196.3(A) (requiring "all workmen employed by or on behalf of any public body engaged in the construction of public works" to be paid "not less than the prevailing hourly rate of wages for legal holiday *and overtime work*") (emphasis added). Section 196.2(3) of the statute defines the "prevailing hourly rate of wages" as "the

wages and fringe benefits determined to be prevailing by the United States Department of Labor pursuant to [federal law]."

11. Defendants alternatively argue that the FLSA preempts any state law tort claim based on an employer's retaliation against an employee for making an FLSA complaint. However, because McKenzie has not even asserted a violation of Oklahoma public policy cognizable under *Burk*,

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

we need not reach the constitutional issue of preemption. *See Ashwander v. TVA,* 297 U.S. 288, 346–47, 56 S.Ct. 466, 482–83, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) (noting well-established rule that federal courts should avoid deciding constitutional issues if narrower grounds for decision exist).