F I L E D
United States Court of Appeals
Tenth Circuit

NOV 13 1998

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

DALE FRUSHER,

        Plaintiff-Appellee,

v.

DILLARD DEPARTMENT STORES,
INC., d/b/a Dillards,

        Defendant-Appellant.

Nos. 97-6154 & 97-6256
(D.C. No. 95-CV-1763)
(W.D. Okla.)

ORDER AND JUDGMENT *

Before **ANDERSON** , **BARRETT** , and **TACHA** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

these appeals. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. These cases are

therefore ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Dale Frusher brought suit against his former employer, Dillard Department Stores, Inc. (Dillards), alleging that he had been terminated from his job as chief of security for the Dillards' Penn Square Mall store in Oklahoma City in violation of Oklahoma public policy. A jury awarded plaintiff $28,000 in back pay and $20,000 in damages for emotional distress. The district court denied Dillards' Rule 50(b) motion for judgment as a matter of law. Dillards appeals from the judgment entered against it on the jury's verdict and from the order denying its Rule 50(b) motion. [1] In its statement of the case, Dillards also states that it is appealing the court's award of prejudgment interest to plaintiff. See Appellant's Opening Br. at 4. The parties do not present argument on

---

[1] Dillards' appeal of the jury verdict and the denial of its Rule 50(b) motion was assigned case No. 97-6154. Plaintiff filed a separate appeal from the jury verdict and also appealed the court's initial denial of his motion for prejudgment interest. That appeal was assigned case No. 97-6170. This court ordered briefing regarding whether the district court's order entering the jury verdict and its order denying the Rule 50(b) motion were final in the absence of a determination of plaintiff's entitlement to prejudgment interest.

After the jurisdictional briefs were filed, plaintiff voluntarily dismissed the appeal in case No. 97-6170. This court finds it has jurisdiction over case No. 97-6154 based on the following chronology: judgment on the jury verdict was entered on December 20, 1996. Dillards filed a timely Rule 50(b) motion which was denied on April 2, 1997. On May 2, 1997, Dillards filed a timely notice of appeal giving this court jurisdiction to hear its challenges to the entry of the jury verdict and the denial of the Rule 50(b) motion.

After the district court granted plaintiff's third application for prejudgment interest, Dillards filed another timely notice of appeal which was assigned case No. 97-6256 and which is companioned with this case, No. 97-6154.

-2-

prejudgment interest in their briefs; this court will, therefore, deem the issue waived. See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990).

Because the parties are familiar with the facts of this case, we will refer to them here only briefly. As mentioned above, plaintiff was chief of security for the Dillards' Penn Square Mall store in Oklahoma City. Until the events giving rise to this lawsuit, plaintiff's tenure with Dillards was marked by consistently positive performance reviews. In 1995, new management was appointed at the store. Among the changes made by new management was the purchase and installation of surveillance cameras with audio capability. Plaintiff testified that when the subject of surveillance cameras came up he informed Ms. Suz Watts, the store's operations manager, that signs would need to be posted informing people about the possibility that their conversations would be monitored.

On July 13, 1995, after becoming increasingly dissatisfied with various issues involving store security and the use of security personnel, plaintiff placed a call to corporate headquarters and spoke with Ms. Carol Gardner who had been the former operations manager at the Penn Square store. Plaintiff maintained that he discussed the audio surveillance cameras during this conversation, a contention denied by Ms. Gardner.

Ms. Gardner, who was at that time a legal assistant in the corporate legal department, told plaintiff to bring his complaints to Mr. Rick Willey, the vice-president and director of stores for all Dillards' stores in Oklahoma. That same day, upon learning of plaintiff's call to Ms. Gardner, the store manager, Mr. Doug Vance, the operations manager, Ms. Watts, and Mr. Willey held a meeting at the Penn Square store at which plaintiff was present. At that meeting, the surveillance cameras were discussed, but plaintiff did not voice his concerns regarding their audio capability. There is no evidence of any further communication between plaintiff and Dillards' management regarding the audio surveillance issue. Plaintiff did not notify any other official entity regarding Dillards' use of audio surveillance cameras.

In addition to issues surrounding surveillance, plaintiff was informed at the July 13th meeting that he would no longer have the authority to hire security personnel without the approval of the store manager or the operations manager. There was no evidence that plaintiff misunderstood or misinterpreted this directive.

On August 3, 1995, a new guard, Mr. Rodney McCrady, appeared for work at the store. No one in Dillards' management had interviewed or hired Mr. McCrady prior to his reporting for work. Although at trial plaintiff denied hiring Mr. McCrady, Mr. McCrady himself had told Dillards' management on two

separate occasions shortly after he began working that plaintiff had indeed hired him. There was testimony at trial that two other security personnel may have been involved in Mr. McCrady's hiring, but neither of these men came forward to inform Dillards' management that they, and not plaintiff, had done the hiring. Upon confirming with Mr. McCrady that plaintiff had hired him, Mr. Willey determined that plaintiff would be terminated for insubordination.

As mentioned above, the jury found in favor of plaintiff, and the court refused to grant Dillards' motion for judgment as a matter of law. In reviewing the denial of a motion for judgment as a matter of law, we examine the matter de novo using the same standard as that applied by the district court. See McKenzie v. Renberg's Inc., 94 F.3d 1478, 1483 (10th Cir. 1996). Thus, we must decide "whether, viewing the evidence in the light most favorable to the nonmoving party, the evidence and the inferences to be drawn from it are so clear that reasonable minds could not differ on the conclusion." Id. (quotations omitted). Judgment under Rule 50(b) is appropriate "only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." Id. (quotation omitted). Applying this standard, we reverse the judgment of the district court.

Plaintiff's complaint alleges only a single cause of action, that for "discharge[] for performing an act consistent with a clear and compelling public

policy by reporting the illegal use of audio equipment." Appellant's App. Vol. I at 2.[2] This claim is derived from Burk v. K-Mart Corp., 770 P.2d 24 (Okla. 1989).

> In Burk, the Oklahoma Supreme Court carved out a narrow exception to the Oklahoma employment-at-will doctrine by recognizing a tort cause of action "where an employee is discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy."

McKenzie, 94 F.3d at 1487 (quoting Burk, 770 P.2d at 29).

In order to prevail on his public policy discharge claim, plaintiff must present evidence that his termination was significantly motivated by his complaint regarding the audio surveillance. See White v. American Airlines, Inc., 915 F.2d 1414, 1420 (10th Cir. 1990). To meet the significant motivation standard, plaintiff was required to "present evidence that does more than show [that] the exercise of [his] statutory rights was only one of many possible factors resulting in [his] discharge." Blackwell v. Shelter Mut. Ins. Co., 109 F.3d 1550, 1554 (10th Cir. 1997) (quotation omitted). Further, plaintiff needed to prove that Dillards knew of his complaint regarding audio surveillance and terminated him because of it. See White, 915 F.2d at 1422.

---

[2] Plaintiff based this claim on Oklahoma's Security of Communications Act, Okla. Stat. tit. 13, §§ 176.1-176.14.

We have carefully reviewed the record in this case and can find no evidence linking plaintiff's termination to his concerns about audio surveillance. The only evidence in the record of plaintiff discussing audio surveillance with management was his remark to Ms. Watts, the store operations manager, regarding the need for disclosure signs near the cameras. There is no evidence that he ever discussed the legalities of audio surveillance with anyone from Dillards' management. There was no evidence that Ms. Gardner, the legal assistant to whom plaintiff voiced his concerns, was responsible for his termination or that Mr. Willey, the person who actually made the termination decision, knew of plaintiff's problems with the audio cameras. See id. ("Plaintiff could have been terminated 'because' of his refusal to commit perjury only if the American officials responsible for his termination were in fact aware that he refused to commit perjury."); cf. McKenzie, 94 F.3d at 1486-87 (holding that informing employer of possible risk of claims from others is not protected activity under Fair Labor Standards Act).

The only evidence even suggesting a nexus between plaintiff's complaints regarding the use of audio surveillance and his termination is the fact that his conversation with Ms. Gardner occurred approximately one month before his termination. Under the facts of this case, however, this temporal link, without more, is not enough. See Thompson v. Medley Material Handling, Inc., 732 P.2d

461, 464 (Okla. 1987) (affirming summary judgment for defendant where no inference of retaliation was raised by discharge that followed workers' compensation claim by six weeks).

In addition to plaintiff's failure to link his termination to his complaint regarding audio surveillance, plaintiff's case suffers from another fundamental defect. The evidence is undisputed that, when questioned by Dillards' management regarding who hired him, Mr. McCrady, on two occasions, told management that plaintiff had hired him. Plaintiff himself acknowledged that Dillards' management sincerely believed this to be true. Thus, there was no dispute or genuine issue about the sincerity of Dillards' belief at the time of the termination that plaintiff had been insubordinate in hiring a security guard without management approval. There was no evidence to raise a genuine doubt about Dillards' motivation in firing plaintiff. Even in the face of contrary evidence at trial regarding the circumstances of Mr. McCrady's hiring, the test is one of the defendant's good faith at the time of the termination. See McKnight v. Kimberly Clark Corp. , 149 F.3d 1125, 1129 (10th Cir. 1998). Thus, if Dillards believed that plaintiff had hired Mr. McCrady contrary to explicit corporate policy and terminated plaintiff for that reason, such belief would be a defense to a claim of retaliatory discharge even if the belief was later found to be erroneous. See id.

We note that the district judge in this case viewed Dillards' Rule 50(b) motion as presenting a very close call.  With the benefit of McKnight, however, published well after trial, we are confident that Dillards' Rule 50(b) motion should have been granted.

In case No. 97-6154, we REVERSE the April 2, 1992 order of the United States District Court for the Western District of Oklahoma denying Dillards' motion for judgment as a matter of law.  In case No. 97-6256, we VACATE the district court's order of June 12, 1997, awarding prejudgment interest to plaintiff.  Both cases are REMANDED to the district court for further proceedings consistent with this order and judgment.

Entered for the Court

Stephen H. Anderson
Circuit Judge