**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 24, 2012

Lyle W. Cayce
Clerk

No. 11-11068

DELINDA "DOLLY" LASATER

Plaintiff - Appellant

v.

TEXAS A&M UNIVERSITY–COMMERCE; DAN JONES; MARY HENDRIX

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas, Dallas
3:10-cv-01018-M

Before DAVIS, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Delinda "Dolly" Lasater ("Lasater ") brought this suit under the Fair Labor Standards Act (FLSA) and the Texas Whistleblower Act alleging Dan Jones, Mary Hendrix, and Texas A&M University–Commerce ("TAMUC") terminated her employment because she reported FLSA violations involving employee compensation time. Lasater appeals the district court's grant of summary judgment in favor of the defendants-appellees.  Finding no error, we

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-11068

AFFIRM the grant of summary judgment dismissing Lasater's claims for the reasons more fully set forth below.

I.

This case arises from TAMUC's termination of Lasater's employment in December 2009. From March 2006 to December 2009, Lasater was employed as the Director of the Office of Financial Aid and Scholarships at TAMUC. Prior to that, Lasater worked in the Financial Aid Department at Texas A&M University–Corpus Christi for 17 years.

In November 2008, Lasater met with Lori Ellison, an outside auditor from The Texas A&M University System who was conducting a regularly scheduled audit. During the meeting, Lasater alleges that Ellison asked her if she had any "concerns" and Lasater told her that "there were some things that were of concern to me and I felt like I needed to, in good faith, report some things that I thought were violations, including comp time." Lasater alleges that in the course of the conversation with Ellison she discussed a number of problems related to the university's employee compensatory time ("comp time") policy. First, she was concerned that comp time had to be used before vacation time; because vacation time would be lost if not taken before the end of the year, this could in turn cause employees to lose accrued comp time. She also voiced her concerns that employees in her department had accrued large balances of comp time and were too busy for Lasater to allow them to timely use their comp time and still meet the demands of her office. Third, she specifically expressed her concerns about one of her employees, Diane Lewis, who had been promoted to a position within the department exempt from the overtime requirements of the

No. 11-11068

FLSA and TAMUC had declined Lasater's request that Lewis be paid for her accrued comp time after her promotion. Finally, Lasater alleges that she reported to Ellison her concerns about the operation of TAMUC's Financial Services division, including its failure to "draw down" its allotted federal funds and the fact that it was not performing monthly reconciliations related to federal funds for financial aid. At the time of the meeting Lasater did not suggest to Ellison that TAMUC policies regarding comp time violated the FLSA or refer to any applicable law she believed had been violated.

Relevant TAMUC policy provides that employees who are not exempt under the FLSA may earn comp time for working more than forty hours per week; the policy requires component universities to compensate employees by giving them time off rather than paying them overtime. TAMUC policy also provided that administrators who supervise staff were to ensure that no employee accrue a comp time balance in excess of 240 hours and that, if necessary, employees were to use comp time before taking vacation time. Lasater, as a supervisor, had the responsibility for approving, and the authority to deny, employee leave requests. The policy also states that an employee who transfers between departments may, upon the department managers' agreement, be paid for accumulated comp time but no policy required payment for comp time to an employee promoted within a department. TAMUC policy additionally provides that inquiries or interpretations of FLSA legal issues should be directed to the System Human Resources Office or the Office of General Counsel.

In December 2008, Ellison reported Lasater's concerns up the chain of command to Lasater's supervisor, Stephanie Holley; Mary Hendrix, Vice

No. 11-11068

President for Student Access and Success; and Dan Jones, President of TAMUC. Lasater alleges that shortly after her conversation with the auditor Holley and Hendrix demanded to know why she had reported the comp time issue and began to act colder toward her, harassed her, increased their scrutiny of her, and forced her to take unqualified employees.

In May 2009, Holley gave Lasater a favorable evaluation, and in August, Lasatar received a merit raise. In September 2009, Holley and Hendrix met with Lasater and discussed their concerns about the need for a training manual, the role of Lewis, and how Lasater was not "allowing other people into [her] inner circle." In early December 2009, Rose Giles, one of Lasater's subordinates, approached Holley to discuss her frustration with the fact that she did not feel Lasater's staff was properly trained. Holley then spoke with Susan Grove, the Assistant Director of Scholarships, who alleged that Lasater did not adequately train her staff, spent most of her time with co-employee Lewis to the exclusion of all others, repeatedly arrived late, and had a tendency to "lash out." Grove stated that she was so distressed by Lasater's management style that she was planning to leave the university. On December 15, 2009, Holley and Hendrix informed Lasater that her employment was terminated.

The district court granted summary judgment for TAMUC and dismissed Lasater's claims under both the FLSA and the Texas Whistleblower Act. Lasater now appeals from that judgment.

II.

We review a district court's grant of summary judgment *de novo*, viewing all disputed facts and inferences in the light most favorable to the non-movant.

No. 11-11068

*Rockwell v. Brown*, 664 F.3d 985, 990 (5th Cir. 2011).  Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).


III.

Lasater argues first that TAMUC terminated her because she reported concerns with employee comp time, including TAMUC's policy requiring the taking of comp time before vacation time, the large accumulated balances of employee comp time, and her perceived inability to allow employees to redeem their comp time in a timely fashion and still meet the demands of her office, as well as TAMUC's unwillingness to pay Lewis for her accumulated comp time.

The FLSA makes it unlawful to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter."  29 U.S.C. § 215(a)(3) (2006).  A retaliation claim under the FLSA is  subject to the *McDonnell Douglas* analytical framework.  *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 577 (5th Cir. 2004).  Under the FLSA, "a plaintiff must make a *prima facie* showing of: (1) participation in protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action." *Hagan v. Echostar Satellite, LLC*, 529 F.3d 617, 624 (5th Cir. 2008).  When the plaintiff "meets this burden, the defendant must then articulate a legitimate, non-discriminatory reason for its decision. The burden then shifts to the plaintiff to demonstrate that the proffered reason is a pretext for discrimination."  *Id.*

No. 11-11068

To demonstrate that she participated in an FLSA protected activity, Lasater must first demonstrate that she filed a complaint. In order for an employee's communication to constitute a "complaint," the "employer must have fair notice that an employee is making a complaint that could subject the employer to a later claim of retaliation" and the "complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the [FLSA] and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S.Ct. 1325, 1334-35 (2011). An oral complaint may satisfy this standard. *Id.* Not all "abstract grumblings" or vague expressions of discontent are actionable as complaints. *Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 44 (1st Cir. 1999). Though a plaintiff need not explicitly refer to the FLSA statute itself, the complaint does need to be framed in terms of potential illegality. *See Hagan*, 529 F.3d at 626.

Further, this circuit has recognized that an employee's communication does not constitute a complaint unless that employee "somehow steps outside of his normal job role" so as to make clear to the employer that the employee is "taking a position adverse to the employer." *Id.* at 627-28. Such a requirement is "eminently sensible for management employees" because a managerial position "necessarily involves being mindful of the needs and concerns of both sides and appropriately expressing them." *Id.* at 628. Thus, voicing "concerns is not only *not adverse* to the company's interests, it is exactly what the company *expects* of a manger." *Id.* (emphasis in original). Without such a requirement, "nearly every activity in the normal course of a manager's job would be protected activity." *Id.*

No. 11-11068

Illustratively, a personnel director responsible for monitoring compliance with workplace laws did not engage in protected activity when she discussed her "concerns about the company's possible FLSA violations" with the president of the company. *McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1481 (10th Cir. 1996). The Tenth Circuit found her "job responsibilities" included discussing wage issues and that assisting the company with FLSA compliance was "completely consistent with her duties." *Hagan*, 529 F.3d at 627 (quoting *McKenzie*, 94 F.3d at 1487). It held that it is "the assertion of statutory rights (*i.e.*, the *advocacy* of rights) by taking some action adverse to the company . . . that is the hallmark of protected activity." *Id.* (emphasis in original) (quoting *McKenzie*, 94 F.3d at 1486). Thus because McKenzie "never crossed the line from being an employee merely performing her job as personnel director to an employee lodging a personal complaint about the wage and hour practices of her employer and *asserting* a right adverse to the company," her discussion of her FLSA violation concerns with the president could not reasonably "be perceived as directed towards the assertion of rights protected by the FLSA." *Id.* (emphasis in original) (quoting *McKenzie*, 94 F.3d at 1486-87).

Here Lasater can not demonstrate that her statements about comp time constituted a complaint as required by the FLSA.  Her statements were made as part of her interaction as a department head with the auditor during a routine audit.  Part of Lasater's responsibilities as Director of the Office of Financial Aid and Scholarships included participating in such scheduled audits and responding to the auditor's questions. If Lasater had followed TAMUC's regulations she would have limited the number of comp hours her subordinates accumulated.  Lasater, as the head of her department, had the obligation and

7

the discretion and authority to keep the accumulated comp hours of her employees below the prescribed level. To the extent that her concern was that too much employee comp time had accumulated, the ability to eliminate and limit this accrual of time was strictly in her own hands. Just as in *McKenzie*, where the plaintiff did not engage in protected activity because she was merely performing duties within her job description and so did not take any action adverse to the company, Lasater's participation in the audit was also part of her job description. Relatedly, monitoring compliance and ensuring compliance with TAMUC's employee comp time policy, the very thing Lasater expressed "concerns" about, was also among her own job responsibilities. *See McKenzie*, 94 F.3d at 1487. As far as Lasater's complaint that her subordinates could not take their comp time and still do their work, this again reflects upon her and her responsibility as a manager. It was incumbent on her to have her department perform its mission with the employees assigned to her. The record reflects that she had the authority at various times to hire more employees and for reasons best known to her she did not do so. Expressing concerns over an employment issue Lasater had the discretion to resolve does not represent an action adverse to TAMUC and does not amount to a clear assertion of rights as required by the statute and jurisprudence. *See Katsen*, 131 S.Ct. at 1335; *Hagan*, 529 F.3d at 627-28.

Moreover, there is no evidence of conduct by Lasater that reasonably could or should have been construed or understood by the employer as a positive assertion of rights against TAMUC related to the FLSA. At no time in her discussion with Ellison did Lasater say anything that would constitute an informal complaint by Lasater on her own behalf or that of her employees

No. 11-11068

against her employer. Nothing in her discussions with Ellison touched on matters outside her duties as department head.[1]

Additionally, Lasater's concerns expressed to the auditor about TAMUC's refusal to pay Lewis for her accrued overtime when Lasater promoted her to assistant director was simply an expression of disagreement about TAMUC policy and not a complaint of illegality. TAMUC policy providing for the payment of overtime balances applied to employees who are transferred among departments of the system but was inapplicable to employees like Lewis who are promoted within the same department.  As a director supervising employees, Lasater was responsible for knowing and implementing the policies related to employment matters in her department. Further, pursuant to policy, questions regarding the FLSA were to be directed to the System Human Resources Office and interpretations of FLSA issues were to be directed to the Office of General Counsel.

Because we find Lasater did not cross the line from employee performing her job to an employee asserting a right adverse to the company, we need not address the so-called good faith rule under which an employee's good faith belief that the employer has committed a FLSA violation may give rise to protected activity even though the employer has committed no such violation.

Lasater has failed to present a genuine issue of material fact that she lodged a complaint against her employer of a violation of the FLSA and

---

[1] Indeed Ellison's affidavit reflects that her understanding of Lasater's comments was that Lasater sought to be advised regarding the proper management of comp time. This supports the conclusion that Lasater's comments were not framed in terms of potential illegality, were not a sufficiently clear assertion of rights, and did not represent her stepping outside of her role and acting as an advocate.

No. 11-11068

therefore has failed to allege that she engaged in any FLSA protected activity. Thus she has not made out a prima facie case of retaliation and her FLSA claim must fail.

IV.

Lasater next argues that the district court erred in dismissing her Texas Whistleblower claim because she asserts her summary judgment evidence demonstrated that she reported issues with the university's treatment of employee comp time (as discussed above), financial reconciliations, and the drawing down of federal funds and satisfied the elements of her state law claim.

The Texas Whistleblower Act ("TWA") provides that a government entity may not take an adverse personnel action against an employee who, in good faith, reports his employer's violation of law to an appropriate law enforcement authority. TEX. GOV'T CODE ANN. § 554.002(a) (West 2012). For purposes of a TWA claim, "good faith" means that (1) the employee believed that the conduct reported was a violation of law and (2) the employee's belief was reasonable in light of the employee's training and experience. *City of Elsa v. Gonzalez*, 325 S.W.3d 622, 626 (Tex. 2010). With respect to determining whether a public employee had a good faith belief that the authority to which he reported an alleged violation of law was an appropriate law enforcement authority, the question is whether "a reasonably prudent employee in similar circumstances would have believed that the governmental entity to which he reported was an appropriate law enforcement authority." *Mullins v. Dall. Indep. Sch. Dist.*, 357 S.W.3d 182, 190 (Tex. App. 2012). To show causation, a public employee must demonstrate that she suffered discriminatory conduct by her employer that

would not have occurred if the employee had not reported the illegal conduct; in other words, the employee must establish a "but-for" causal nexus between her report and the employer's prohibited conduct. *Alejandro v. Robstown Indep. Sch. Dist.*, 131 S.W.3d 663, 667 (Tex. App. 2004).

Lasater alleges that she in good faith filed a complaint of a violation of the law because she believed the comp time issues she reported to Ellison were violations of FLSA and that she had a good faith belief that auditors from The Texas A&M University System were an appropriate law enforcement authority. For the reasons discussed above, the record does not support Lasater's claim that she made a complaint of her employer's violation of law under the FLSA.

In her Texas Whistleblower claim, Lasater also alleges she reported violations of financial accounting practices that public institutions are required to follow. Lasater does not explain in any detail how a failure to follow established reasonable accounting practices amounts to a violation of law that would trigger a whistleblower claim. Even assuming the evidence supports a finding that Lasater engaged in whistleblowing, the evidence does not support a finding that Lasater's whistleblowing is causally related to Lasater's termination.

The record shows that in May 2009, months after Lasater's November 2008 discussions with Ellison, Holley conducted an annual evaluation and gave Lasater a favorable review and in August 2009 Lasater received a merit raise. Lasater was not terminated until December 2009, after Holley and Hendrix received unfavorable reports from two of Lasater's subordinates, more than a year after Lasater's alleged whistleblowing. In light of the stated reasons for appellant's termination and the evidence presented in support thereof, we

No. 11-11068

conclude that the evidence fails to establish a "but for" causal nexus between appellant's report and appellant's eventual termination as a matter of law. *See Alejandro*, 131 S.W.3d at 668 (finding assistant superintendent failed to establish "but for" causal nexus between his reporting of misconduct and his termination when his termination occurred more than ten months after his report).

## V.

For the above reasons, the judgment of the district court is AFFIRMED.