Patricia DANIEL

v.

WINN–DIXIE ATLANTA, INC.

Civ. No. C–84–2176–A.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 22, 1985.

**58**

Kathleen L. Wilde, Atlanta, Ga., for plaintiff.

Homer L. Deakins, Jr., Robert O. Sands, Atlanta, Ga., Kenneth G. Mall, Jacksonville, Fla., for defendant.

## ORDER

O'KELLEY, District Judge.

Presently pending for consideration is defendant's motion for summary judgment. Plaintiff filed this action under the Fair Labor Standards Act (FLSA) § 15(a)(3); 29 U.S.C. § 215(a)(3) (1982), alleging retaliatory discharge. Because questions of material fact remain for resolution, the court denies defendant's motion.

Plaintiff worked for defendant, a Florida corporation which admittedly is engaged in commerce within the meaning of the FLSA. Plaintiff alleges in her affidavit the following facts. In early 1983, defendant installed a new time clock which did not register ·all hours worked. Plaintiff called the Wage and Hour Division (W & H) of the United States Department of Labor (DOL). She asked whether defendant lawfully could deny her overtime compensation in this manner, and was told that defendant could not. W & H advised her that she was within her rights under the FLSA to demand payment for overtime worked.

Plaintiff then asked certain officials of defendant to check the time clock because she believed that she was being underpaid. She also informed them that she had talked to W & H, which had told her that the underpayments were unlawful. The officials denied that a problem existed and ignored plaintiff. On June 3, 1983, she wrote to the Division Manager requesting an explanation for the underpayment and threatening to cease her stock purchases. The letter did not mention her contact with W & H. Defendant investigated plaintiff's complaint and offered to pay her the sum due if she would drop the matter. She agreed and accepted payment.

In November, 1983, defendant questioned whether plaintiff used the postage meter for personal mail. She responded that she had used two 20¢ stamps on one occasion. Defendant then fired plaintiff for this occurrence. She filed this action alleging retaliation for contacting W & H regarding overtime compensation, in violation of § 215(a)(3). Defendant asserts that it fired plaintiff for using the postage meter. Further, defendant denies any knowledge that plaintiff contacted W & H regarding overtime pay.

█ An important fact, defendant's knowledge of plaintiff's contact with W & H, is in dispute. The materiality of this fact hinges on the court's resolution of the issue whether plaintiff's contact with W & H, without her filing a complaint or testifying in any proceeding, was sufficient to trigger the protection of § 215(a)(3). Because the court finds that it was, the question of defendant's knowledge is material and mandates denial of summary judgment.

Section 215(a)(3) provides that it is unlawful to discharge or in any other manner discriminate against an employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has

served or is about to serve on an industry committee.

The United States Court of Appeals for the Eleventh Circuit has not addressed the precise point of whether action outside the precise statutory language is protected. The court will analyze the issue by studying the statute's purposes, Supreme Court construction of similar language, this circuit's interpretation of other § 215(a)(3) terms, and other circuits' decisions.

The FLSA's purpose is remedial: to insure that all employees may obtain a decent standard of living. 29 U.S.C. § 202. Section 215(a)(3) promotes that remedial purpose by prohibiting employer intimidation.

> For weighty practical and other reasons, Congress did not seek to secure compliance with prescribed standards through continuing detailed federal supervision or inspection of payrolls. Rather it chose to rely on information and complaints received from employees seeking to vindicate rights claimed to have been denied. Plainly, effective enforcement could thus only be expected if employees felt free to approach officials with their grievances. This end the prohibition of § 15(a)(3) against discharges and other discriminatory practices was designed to serve. For it needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions. [citations omitted]. By the proscription of retaliatory acts set forth in § 15(a)(3), and its enforcement in equity by the Secretary pursuant to § 17, Congress sought to foster a climate in which compliance with the substantive provisions of the Act would be enhanced.

*Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292, 80 S.Ct. 332, 335, 4 L.Ed.2d 323 (1960).

█ Due to its remedial purpose, courts have construed the statute broadly. *E.g., Shultz v. Mack Farland & Sons Roofing Co.*, 413 F.2d 1296, 1300 (5th Cir.1969). This liberal construction should be accompanied by reasonableness and common

sense. *Dunlop v. Ashy*, 555 F.2d 1228, 1234 (5th Cir.1977). In the instant case, a liberal construction of § 215(a)(3) would permit plaintiff to be protected for consulting W & H concerning her suspicions that defendant was not paying her for overtime. Such a construction is reasonable, and in fact is dictated by common sense. As the Court stated in *DeMario*, an employee must feel free to approach W & H with information. 361 U.S. at 292, 80 S.Ct. at 335. In this way, an employee may vindicate her rights.

To construe § 215(a)(3) as narrowly as defendant wishes would do violence to the statute's goals. Carrying the argument to its logical extremes, an employee who consulted, but did not file a complaint with, W & H and who informed her employer first would not be protected as long as the employer fired her before she actually could file a complaint. The act would protect, however, an employee who never bothered to discuss matters with an employer, but who first filed a complaint. Such a result defies common sense, and is inimical to § 215(a)(3)'s purpose.

A Supreme Court decision construing § 8(a)(4) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(4) (1982) supports a liberal interpretation of § 215(a)(3). In *National Labor Relations Board v. Scrivener*, 405 U.S. 117, 92 S.Ct. 798, 31 L.Ed.2d 79 (1972), an employee gave a sworn statement to an NLRB investigator. The employee had not filed a charge or testified at a hearing. The statute prohibits an employer from discharging or otherwise discriminating against an employee because he has filed charges on given testimony under this chapter. 29 U.S.C. § 158(a)(4).

The Court held that the employee's making of a sworn statement was protected under the NLRA. *Id.* at 121, 92 S.Ct. at 801. That statute's purpose is to allow all employees to be free from coercion to give their information to the NLRB. Additionally, § 8(a)(4) provides that an employer may not discharge "or otherwise discriminate" against an employee. The words "or

otherwise discriminate" proscribe a variety of discriminatory actions which violate the statute, and indicate Congress' intent that § 8(a)(4) be construed broadly. *Id.* at 122, 92 S.Ct. at 801. A liberal approach also is required to effectuate the remedial purposes of the NLRA. Finally, no "substantial countervailing considerations" existed which mandated a narrower construction. *Id.* at 124–25, 92 S.Ct. at 802–03.[1]

Decisions under the NLRA are useful guidelines for FLSA determinations. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 723, 67 S.Ct. 1473, 1473, 91 L.Ed. 1772 (1947) (decisions under NLRA on coverage are persuasive regarding coverage under FLSA). Thus, the court's analysis in *Scrivener* provides guidance for the Court's determination under the FLSA. Both sections 215(a)(3) and 8(a)(4) were designed to promote access to federal authorities, to inform them of potential violations, and to permit assertion of employee rights. *Scrivener*, 405 U.S. at 122, 92 S.Ct. at 801; *DeMario*, 361 U.S. at 292, 80 S.Ct. at 335. Second, the language of § 215(a)(3), "or in any other manner discriminate," is as broad as that of § 8(a)(4), "or otherwise discriminate." Both terminologies demonstrate Congress' intent to construe the Acts' provisions broadly. *Scrivener*, 405 U.S. at 122, 92 S.Ct. at 801.

Other language of the two provisions is similar. Section 8(a)(4) prohibits discrimination against an employee who "has filed charges or given testimony under this subchapter." 29 U.S.C. § 158(a)(4). Section 215(a)(3) protects an employee who "has filed any complaint . . . or has testified or is about to testify." *Id.* § 215(a)(3). Yet the Court in interpreting § 8(a)(4) stated that "[t]he Act's reference . . . to an employee who 'has filed charges or given testimony' could be read strictly and confined in its reach to formal charges and formal testimony. It can also be read more broadly." 405 U.S. at 122, 92 S.Ct. at 801. The Court continued that a broad interpretation "would be consistent with § 8(a)(4)'s purpose and objective." *Id.* Arguably, § 215(a)(3)'s language, which also protects institution of a proceeding or service on an industrial committee, is broader.

The NLRA and FLSA are pieces of 1930's social legislation, and are of the same general character. 331 U.S. at 723, 67 S.Ct. at 1473. Both are remedial in nature, and are to be construed broadly to effectuate that purpose. The rights protected by these provisions should not be applied in a narrow, grudging manner. *Tennessee Coal, Iron & RR Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597, 64 S.Ct. 698, 702, 88 L.Ed. 949 (1944). Finally, as in *Scrivener*, no "substantial countervailing considerations" exist to preclude § 215(a)(3)'s protection of an employee who contacts and consults W & H regarding an FLSA violation. Such an action furthers the FLSA's purpose of providing information to authorities and permitting employee assertion of rights without trepidation.[2]

---

1. The Court also based its holding on the fact that the NLRB had given a broad interpretation to § 8(a)(4), that the NLRB can subpoena witnesses, and that the practicalities of agency action support such a view. 405 U.S. at 122–23, 92 S.Ct. at 801–02.

2. Few cases discuss the scope of § 215(a)(3)'s protection. Some courts, however, have discussed other provisions with language similar to that of the NLRA and FLSA. In *Marshall v. Daniel Constr. Co.*, 563 F.2d 707 (5th Cir.1977), DOL promulgated a regulation under the Occupational Safety and Health Act, 29 U.S.C. §§ 651 *et seq.* permitting an employee to walk off the job if he believed that his life was in danger and that insufficient time existed to pursue regular statutory remedies. The court held that the regulation was beyond DOL's power to promulgate under the statute. 563 F.2d at 715. The court also noted that DOL's reliance on *Scrivener* was misplaced, because plaintiff did not allege that he requested an inspection, pursuant to the statute. *Id.* at 716. Additionally, a "substantial countervailing consideration" existed: the potential to disrupt or damage an employer's business. *Id.*

In *Marshall v. Whirlpool Corp.*, 593 F.2d 715 (6th Cir.1979), the court disagreed with the holding in *Daniel*, holding that DOL had the power to promulgate the regulation, and that *Scrivener* and other cases recommended a liberal construction of remedial provisions similar to those of OSHA. *Id.* at 723–24. The Supreme Court granted certiorari in *Whirlpool*. 444 U.S. 823, 100 S.Ct. 43, 62 L.Ed.2d 29 (1979). Specifically mentioning the conflict between the Sixth

Although not construing specifically § 215(a)(3), cases decided by the Eleventh and former Fifth Circuits give the FLSA a liberal construction. In *Goldberg v. Bama Mfg. Corp.*, 302 F.2d 152 (5th Cir.), plaintiff reported a violation to W & H, filed a complaint, and was discharged. *Id.* at 153. The court held that defendant violated the FLSA. *Id.* at 154. Although plaintiff generally was an unsatisfactory worker, the immediate cause of her discharge was the assertion of her rights. *Id.* Because of her work history, the court ordered back pay, but not reinstatement. The court based its rulings on its reluctance to condone violations of the FLSA, and arguably gave a rather broad reading of remedies available thereunder. *Id.* at 156.

In *Wirtz v. Home News Publishing Co.*, 341 F.2d 20 (5th Cir.1965), an employee testified at a criminal proceeding brought under the Act against his employer and was fired. *Id.* at 21. The employer claimed that § 215(a)(3) did not protect the employee's conduct because the statutory language covering testimony at "any such proceeding," meant any proceeding initiated by the employee. Obviously, the employee did not and could not initiate a criminal proceeding. *Id.* The court, citing § 215(a)(3)'s purpose, broadly interpreted "any such proceeding" to include any proceeding under or related to the FLSA. *Id.* at 22–23.

The court decided *Wirtz v. Ross Packaging Co.*, 367 F.2d 549 (5th Cir.1966) by construing liberally "employee" under § 215(a)(3). 367 F.2d at 550. The court

noted that the district court had held that employees were terminated as a direct result of their participation in DOL's investigation and their insistence upon receiving payments due. *Id.* Because the court broadly interpreted employee, it upheld the district court's decision.[3]

Lower court cases in this circuit are more on point. In *Marshall v. Georgia Southwestern College*, 489 F.Supp. 1322 (M.D.Ga.1980), a plaintiff complained to her employer of an Equal Pay Act violation. Her husband, also an employee, was fired. The court held that the firing violated § 215(a)(3), expanding that provision to include not only a complaint to one's employer, but also retaliation against one's spouse. 489 F.Supp. at 1331. The district court for the Southern District of Florida held that the FLSA protected employees who refused to return their back pay checks which were owed to them as a result of the employer's violation of the Act. *Hodgson v. Yinger*, 65 L.C. ¶ 32,533, at 44,887 (C.C.H.) (S.D.Fla. July 9, 1971). In *Berry v. Andrews*, 535 F.Supp. 1317 (M.D. Ala.1982), the plaintiff had "contacted" W & H about payments of wages; the opinion does not indicate whether this contact included filing a complaint. The court held that plaintiff could maintain an action under the FLSA and the Service Contract Act, 41 U.S.C. §§ 351 *et seq.*, and denied defendant's motion to dismiss. 535 F.Supp. at 1318. This circuit's decisions apparently favor broad construction of the FLSA to effectuate its purposes. Plaintiff's activities in the instant case fit within the con-

and Fifth Circuits, the Court affirmed *Whirlpool. Whirlpool v. Marshall*, 445 U.S. 1, 100 S.Ct. 883, 63 L.Ed.2d 154 (1980). The Court did not discuss *Scrivener*'s applicability. The viability of *Daniel* thus is greatly diminished in *Whirlpool's* wake. Additionally, the instant case is distinguishable. First, the FLSA was not discussed in *Daniel*. Second, no "substantial countervailing considerations," such as damage to an employer's business, are present in the case sub judice. Plaintiff's contact with W & H would not harm defendant's operations.

3. The court's expansive interpretation of employee in *Ross Packaging* lends support to the

proposition that this circuit broadly construes FLSA provisions. No mention was made that the employees had filed a complaint, initiated proceedings, or testified. If they did not, the court's dictum shows a tendency to liberally interpret § 215(a)(3)'s protection.

In *Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998 (5th Cir.1969), the court noted that Title VII's prohibition of retaliation was broader than that of the NLRA or FLSA. *Id.* at 1006 n. 18. Title VII also specifically includes assistance and participation in an investigation. *Id.*

struction, because she attempted to enforce the FLSA.[4]

Other circuits interpreting § 215(a)(3) have done so in a broad manner. The United States Court of Appeals for the Tenth Circuit held that § 215(a)(3) protects employees who refused to release their back pay claims and were fired. *Marshall v. Parking Co. of America—Denver, Inc.,* 670 F.2d 141, 142–43 (10th Cir.1982). In *Love v. Remax of America, Inc.,* 738 F.2d 383 (10th Cir.1984), an employee wrote a memorandum to the president of her employer claiming that men were paid more, and attached a copy of the Equal Pay Act, a part of the FLSA. *Id.* at 384. The court held that her discharge violated § 215(a)(3) because that provision applied to an employee's unofficial assertion of rights, such as complaints to her employer. *Id.* at 387.

The United States Court of Appeals for the Eighth Circuit likewise broadly construed § 215(a)(3). An employer asked his employee to endorse her back pay check to him. *Brennan v. Maxey's Yamaha, Inc.,* 513 F.2d 179, 181–82 (8th Cir.1975). When she refused, she was discharged. The court held that this discharge was unlawful. *Id.* at 181.

The United States Court of Appeals for the Sixth Circuit has not ruled on this issue directly. In *Bush v. State Indus., Inc.,* 599 F.2d 780 (6th Cir.1979), plaintiff asserted that he had been fired because he complained to his employer about the latter's failure to compensate him for overtime. The court held that the newly passed amendment of § 216(b), granting an employee a private right of action, applied to plaintiff's claim. The court remanded so

that plaintiff could pursue his cause of action. Although not reaching the issue directly, the opinion in *Bush* indicates approval of § 215(a)(3) protection for complaints to employers. Additionally, a Tennessee district court held that § 215(a)(3) is violated if an immediate factor in discharge is the employee's assertion of rights, either officially or in complaints at work. *Bonham v. Copper Cellar Corp.,* 476 F.Supp. 98, 103 (E.D.Tenn.1979).

In the Fourth Circuit, a district court in North Carolina held that an employer's attempt to persuade an employee to return back pay checks violated § 215(a)(3). *Donovan v. Rockwell Tire & Fuel, Inc.,* 99 L.C. ¶ 34,466 at 45,921 (C.C.H.) (M.D.N.C. Mar. 30, 1982). In *Wirtz v. C.H. Valentine Lumber Co.,* 236 F.Supp. 616 (E.D.S.C. 1964), the district court noted that an employer's threats to fire an employee were insufficient to trigger FLSA protection. This case comes close to interpreting § 215(a)(3) in a strict manner. The court, however, cited only a requirement of a positive and overt act to come within § 215(a)(3) protection. *Id.* at 619–20. Its example is not of an employee filing a complaint, but of one demanding payment of wages due. *Id.*

Discussion of the precise coverage of § 215(a)(3) among the circuits is sparse. In most decisions on the provision, an employee has performed an act specifically mentioned in the statute. The general consensus, however, appears to be that § 215(a)(3) should be broadly construed to effectuate its purposes.[5]

---

**4.** See *supra* notes 2 and 3. This court will not address whether merely complaining to an employer triggers FLSA protection, because plaintiff alleges that she contacted W & H.

**5.** Few cases discuss the parameters of § 215(a)(3) coverage. In *Brown & Root Inc. v. Donovan,* 747 F.2d 1029 (5th Cir.1984), the court did not apply retaliation protection under the Energy Reorganization Act (ERA), 41 U.S.C. § 5851(a) because the employee complained only to his employer. 747 F.2d at 1034. The ERA prohibited retaliation against an employee who commenced proceeding, testified at, or assisted or participated in, a proceeding. *Id.* at

1030 (citing 42 U.S.C. § 5851(a)). The court distinguished *Scrivener* because that case involved some communication with the enforcement agency, whereas the case before it concerned only an internal memo. *Id.* In *Donovan v. Square D Co.,* 709 F.2d 335 (5th Cir.1983), the court refused to apply a state statute of limitations which would have foreclosed an employee's OSHA claim. *Id.* at 337. Citing *Scrivener* and *DeMario,* the court stressed that effective enforcement is possible only if employees feel free to approach officials. *Id.* at 338.

In *Phillips v. Interior Bd. of Mine Operations Appeals,* 500 F.2d 772 (D.C.Cir.1974), the court broadly construed the Mine Safety Act (MSA),

To summarize, plaintiff allegedly not only complained to her employer, but contacted W & H, explained her problem, and was advised to demand her rights. A common sense approach, coupled with the prescribed liberal construction, suggests that plaintiff's actions promoted the FLSA's purpose of protecting workers, and § 215(a)(3)'s goals of providing information to federal officials and allowing an employee to assert her rights. To permit her firing for her actions would chill these purposes.[6] Because material issues of fact exist, such as whether defendant was aware of plaintiff's contact with W & H, the court will deny defendant's motion for summary judgment.

30 U.S.C. §§ 801 *et seq.*, to protect a miner who walked off the job due to unsafe conditions. At that time, the Act was similar to FLSA and NLRA. *Id.* § 820(b)(1) (1976). Nonetheless, the Court cited *Scrivener* as authority for broad interpretation of the MSA, to effectuate its remedial and informational purposes. 500 F.2d at 782.

6. The court reviewed the committee and conference reports, and a number of the debates, concerning the FLSA of 1938, the 1949 amendment of § 215(a)(3), and the 1977 amendment of § 216(b). The last gave to employees a private right of action under § 215(a)(3). The main thrust of the legislative history concerned the very enactment of a law regulating wages and hours, and its effect on the national economy and on various industries and regions. Only one reference shed any light, however dim, on § 215(a)(3)'s scope. Sen.Rpt. No. 497, 95th Cong., 1st Sess. 16 (1977), U.S.Code Cong. & Admin.News 3201, 3260. A provision discussed § 4's amendment of § 216(b) to authorize employee suits "against any employer who discharges or otherwise discriminates against an employee who seeks to enforce the Act or cooperates with the Secretary in enforcing the Act." *Id.* This slight bit of legislative history supports the court's interpretation of § 215(a)(3), because plaintiff in the instant case was trying to enforce the FLSA.