# United States Court of Appeals
## For the First Circuit

No. 03-1752

EFRAÍN CLAUDIO-GOTAY, EFRAÍN CLAUDIO-CRUZ,
and ELIA M. GOTAY-CRUZ,

Plaintiffs, Appellants,

v.

BECTON DICKINSON CARIBE, LTD.; VÍCTOR PAGÁN, PERSONALLY
AND AS GENERAL MANAGER OF BECTON DICKINSON CARIBE, LTD.;
HIRAM OCASIO, PERSONALLY AND AS MANAGER OF BECTON
DICKINSON CARIBE, LTD.; JOHN DOE; JANE DOE;
INSURANCE COMPANY X & Y,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Salvador E. Casellas, U.S. District Judge]

Before

Torruella, Circuit Judge,
Coffin, Senior Circuit Judge,
and Selya, Circuit Judge.

Jorge L. M. Cintrón-Pabón, with whom Edgardo R. Jiménez-Calderín and Jiménez Calderín Law Offices were on brief, for appellants.
Manuel A. Núñez-Aragunde, with whom Manuel A. Núñez Law Offices, Martha L. Martínez-Rodríguez, Gloria M. De Corral-Hernández, and De Corral & De Mier were on brief, for appellees.

July 13, 2004

**TORRUELLA**, **Circuit Judge**. Plaintiffs-appellants, Efraín Claudio-Gotay and his parents (hereinafter jointly referred to as "Claudio"), filed suit under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461, and Puerto Rico Public Law 80, 29 P.R. Laws Ann. § 185(a), alleging that Claudio was wrongfully terminated from his employment by defendant-appellee Becton Dickinson Caribe, Ltd. ("Becton") and that Becton failed to give Claudio notice of his right to continued medical coverage. The district court granted summary judgment in favor of Becton. Claudio appeals. For the reasons stated below, we affirm in part and reverse in part.

## I.  Background

Claudio was hired by Becton as a Safety/Environmental & Process Engineer on September 28, 1998. After a month on the job, Claudio was informed that his responsibilities included monitoring the security guards at Becton's Juncos, Puerto Rico plant. This task included "see[ing] to it that the guards are there, that the [guards] render the service, and they give the service the contract specifies." In addition, Claudio was responsible for "approving the [guards'] invoices for payment."

The security guards at the Juncos plant were hired through CM Express Service Corp. ("CM Express"), a contractor. Upon examining the invoices submitted by CM Express, Claudio

concluded that the security guards were not being properly compensated for overtime hours worked. Claudio spoke with his superiors about this potential labor violation and wrote a letter to Becton explaining the potential violation.

In response to Claudio's letter, Becton held a meeting, with Becton's lawyer in attendance, and determined that the security guards were not employees of Becton and, therefore, Becton was not responsible for ensuring that the guards received overtime pay. Becton decided that it would inform CM Express of the potential FLSA violations Claudio had identified. At the conclusion of the meeting, Claudio's supervisors told him that, in the meantime, he should approve the invoices. Claudio refused to do so and was terminated from employment.

## II. **Standard of review**

"We review summary judgment decisions de novo, viewing the facts in the light most favorable to the nonmoving party." GTE Wireless, Inc. v. Cellexis Int'l, Inc., 341 F.3d 1, 4 (1st Cir. 2003) (citation omitted). A summary judgment motion should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We may affirm a grant of summary judgment on any

ground supported by the record.  Geffon v. Micrion Corp., 249 F.3d 29, 35 (1st Cir. 2001).

### III.  Analysis

#### A.  FLSA anti-retaliation provision

Claudio argues that he was wrongfully terminated because the FLSA makes it "unlawful for any person to discharge or in any other manner discriminate against any employee because such employee has filed any complaint" related to the Act.  29 U.S.C. § 215(a)(3).  The elements of a retaliation claim under the FLSA require, at a minimum, a showing that (1) the plaintiff engaged in a statutorily protected activity, and (2) his employer thereafter subjected him to an adverse employment action (3) as a reprisal for having engaged in protected activity.  Blackie v. Maine, 75 F.3d 716, 722 (1st Cir. 1996).  The central issue on appeal is whether Claudio engaged in a statutorily protected activity that triggers the protection of 29 U.S.C. § 215(a)(3).

There are two incidents that Claudio contends fall within the ambit of filing a complaint.  The first incident occurred when Claudio informed Becton, both orally and in writing, that the guards were not being paid overtime.  The second incident occurred when Claudio refused to sign the invoices even after being told that Becton was not the employer of the guards.

As to the first incident, other circuits have held, and we agree, that "it is the assertion of statutory rights . . . by

taking some action adverse to the company . . . that is the hallmark of protected activity under § 215(a)(3)." McKenzie v. Renberg's Inc., 94 F.3d 1478, 1486 (10th Cir. 1996); see also EEOC v. HBE Corp., 135 F.3d 543, 554 (8th Cir. 1998) (requiring action adverse to the company in a Title VII retaliation case). To engage in protected activity, "the employee must step outside his or her role of representing the company and . . . file . . . an action adverse to the employer, actively assist other employees in asserting FLSA rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA." McKenzie, 94 F.3d at 1486. "A requirement of 'stepping outside' a normal role is satisfied by a showing that the employee took some action against a . . . policy . . . and that the action was based on a reasonable belief that the employer engaged in . . . conduct" contrary to the FLSA. HBE Corp., 135 F.3d at 554.

In McKenzie, the Tenth Circuit held that a personnel director did not engage in a protected activity by reporting overtime violations because her job responsibilities included "wage and hour issues." McKenzie, 94 F.3d at 1487. In contrast, the Tenth Circuit held in Conner that a food clerk engaged in a protected activity by reporting overtime violations because the employee had "no management responsibilities regarding the calculation of overtime wages." Conner, 121 F.3d at 1394. In HBE

Corp., the Eighth Circuit held that a personnel director engaged in a protected activity when he stepped outside his employment role by refusing to fire a black employee because the firing was ordered for patently discriminatory reasons. HBE Corp., 135 F.3d at 554.

When Claudio first informed Becton of the potential overtime violations, he did so in furtherance of his job responsibilities. Claudio's job responsibilities included approving invoices documenting the guards' hours worked and their corresponding pay. As Claudio's letter to Becton indicates, Claudio was concerned with protecting Becton, not asserting rights adverse to Becton. Compare id. The letter stated:

> Acceptance of inappropriate conditions of salary payment by an outside contractor to their employees is an inappropriate practice of Becton Dickinson Juncos. Becton Dickinson Juncos and their representative officers can [sic] be responsible for this. . . .
> . . . .
> It is my intention by bringing out this important issue, [sic] avoid potential liability of Becton Dickinson Juncos before any future reclamation related with it.

As in McKenzie, Claudio "never crossed the line from being an employee merely performing h[is] job . . . to an employee lodging a personal complaint." McKenzie, 94 F.3d at 1486. When Claudio first alerted Becton about a potential violation, therefore, he did not engage in a protected activity for purposes of 29 U.S.C. § 215 (a)(3).

As to the second incident, we must determine whether Claudio's refusal to sign the invoices triggers the protection of 29 U.S.C. § 215(a)(3). There is a conflict among the circuits regarding what actions constitute the filing of a complaint. See Valerio v. Putnam Assoc., Inc., 173 F.3d 35, 41 (1st Cir. 1999) (explaining the circuit split). This circuit, although not requiring an employee to file a formal complaint with a court or agency to receive FLSA protection, does require an employee to take action beyond mere "abstract grumblings." Id. at 44. Proceeding on a case-by-case basis, we analyze the facts to inquire whether the communications to the employer were sufficient to amount to a "filing of a complaint" as required by the FLSA. Id. at 45.

Before Claudio refused to sign the invoices, he attended a meeting with Becton's management discussing the guards' overtime pay. At the meeting, Becton's lawyer concluded that the guards were not employees of Becton and therefore that Becton was not responsible for paying the guards' overtime. As a preventive measure, however, Becton's management decided to send a letter informing CM Express that it might be violating the FLSA. Claudio, who was present during this meeting, heard the recommendation of the lawyer, was informed that Becton was not responsible for paying the guards overtime, and knew that Becton was taking action nonetheless. Claudio was also specifically directed to approve the invoices.

We do not believe Claudio's refusal to sign the invoices constituted the filing of a complaint. The FLSA anti-retaliation provision protects an employee's lawful efforts to secure rights afforded by the FLSA. The FLSA does not, however, provide a "shield against legitimate employer actions." Blackie, 75 F.3d at 724. Claudio's refusal to sign the invoices occurred after the whistle had been blown and after corrective actions were being taken to remedy any FLSA violations. The FLSA was created to protect an employee who "lodge[s] complaints or suppl[ies] information to officials regarding allegedly substandard employment practices and conditions." Valerio, 173 F.3d at 42 (citation omitted). Claudio's refusal to sign the invoices did neither. Therefore, Claudio's refusal to sign the invoices did not constitute the filing of a complaint.

**B. Notification of health care coverage**

The Consolidated Omnibus Budget Reconciliation Act ("COBRA") requires that employers allow former employees the opportunity to elect the continuation of their health care coverage for a period of time, at their own expense, if they are terminated. See 29 U.S.C. § 1161. When an employee is terminated, the employer is required to notify the plan administrator within thirty days of the termination. See id. § 1166(a)(2). The plan administrator is then required to notify "any qualified beneficiary" of his or her rights under COBRA within fourteen days of the date on which the

administrator is notified of the termination.  See id. § 1166 (a)(4) & (c).

Claudio alleges that Becton violated 29 U.S.C. § 1166 by failing to give him timely notice that he could continue his health care coverage.  Claudio was terminated on January 22, 1999.  At the latest, Claudio should have received notification of his rights by March 4, 1999.

Becton contends that a COBRA notification letter was sent via certified mail, return receipt requested,[1] to Claudio's address on record on January 27, 1999, and that the mailing of this letter constituted adequate notice.[2]

The issue in this case is not whether mailing a letter via certified first class mail constitutes adequate notice. Rather, the issue is whether there was evidence, sufficient to require summary judgment, that the letter was mailed.  The district court held that there was evidence that the letter was mailed because Becton's custodian of records stated in a sworn declaration that the company complied with COBRA's notice requirements.  The

_____

[1]  At oral argument, Becton's counsel stated that the letter was sent no return receipt requested.  The evidence in the record and Becton's brief states that the letter was sent return receipt requested.

[2]  Becton also contends that it sent Claudio a second letter on March 18, 1999, and personally handed Claudio's friend a third letter on March 18, 1999.  These letters were sent outside the statutorily mandated time frame for informing Claudio of his COBRA rights.

-9-

district court erred by relying on this alleged sworn declaration because, as Becton has conceded on appeal, no such sworn declaration exists.

There are two items in the record that pertain to COBRA notification. The first item is a COBRA notification letter dated January 27, 1999. The second item is a note, not a sworn affidavit, dated March 18, 1999, from "JLKA" to Claudio stating that his COBRA letter "was sent certified with acknowledgment of receipt on January 27 of 1999. The certification number is 093820179. We have never received the acknowledgment." Attached to the note is United States Postal Service Form 3811, which is a form that is attached to a piece of mail, signed by the recipient, and then returned to the sender. There is no signature showing that this form was ever received by Claudio and there are no markings on this form showing that it was ever mailed.

This evidence does not compel the conclusion that the letter was actually mailed; therefore, there is a genuine issue of material fact regarding whether Claudio was given adequate notice within the time period required by COBRA. See, e.g., Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1231 (11th Cir. 2002) (holding that summary judgment is inappropriate where "there is no evidence that the agent sent out a notice to plaintiff, nor any evidence that the . . . necessary steps [were taken] to ensure . . . notification"); Phillips v. Riverside Inc., 796 F. Supp. 403,

407 (E.D. Ark. 1992) (finding no actual evidence that the COBRA letter was mailed). We therefore reverse the district court's grant of summary judgment in favor of Becton on this issue.

## C. Claims under Puerto Rico law

The district court declined to exercise supplemental jurisdiction over Claudio's Puerto Rico law claim after it granted summary judgment to Becton and dismissed the FLSA claim. Since we affirm the district court's dismissal of the FLSA claim, we also affirm the district court's dismissal without prejudice of Claudio's Puerto Rico law claim. Cf. Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims.").

## IV. Conclusion

For the forgoing reasons, the judgment of the district court is affirmed in part and reversed in part. We remand for proceedings consistent with this opinion. Each party shall bear its own costs.

**Affirmed in part, reversed in part and remanded**.