Cecil **STEWART**, Plaintiff,

v.

**MASTERS BUILDERS ASSOCIATION OF KING AND SNOHOMISH COUNTIES, Defendant.**

**Case No. C09–1152–MAT.**

United States District Court, W.D. Washington, at Seattle.

Sept. 8, 2010.

---

George Theodore Hunter, Connell Cordova Hunter & Gautschi PLLC, Timothy James Pauley, Pauley Law Group PLLC, Seattle, WA, for Plaintiff.

D. Michael Reilly, Laura T. Morse, Mary Schug Young, Lane Powell PC, Seattle, WA, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MARY ALICE THEILER, United States Magistrate Judge.

### INTRODUCTION

Plaintiff Cecil Stewart brought this employment action against defendant Master Builders Association of King and Snohomish Counties ("MBA") pursuant to the anti-retaliation provision of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3). He claims retaliation by and constructive discharge from his employment with defendant following his complaint that MBA employees were not being

paid overtime as required by federal and state laws.

Defendant filed a motion for summary judgment and requested oral argument. (Dkt. 17; *see also* Dkt. 22.) Plaintiff opposes the motion. (Dkt. 21.) Now, having considered the parties' submissions, along with the remainder of the record, the Court finds oral argument unnecessary and defendant entitled to summary judgment based on plaintiff's failure to make a showing that he engaged in "protected activity" under § 215(a)(3).

## BACKGROUND

Plaintiff began his employment with MBA as a Sales & Marketing Director in April 2006. (Dkt. 18, Ex. A at 15–16.) In a conversation with Lynda Hester, Human Resources Director/Director of Administration for MBA, in the summer of 2006, plaintiff raised the issue of overtime pay based on the complaints of a number of employees. (Dkt. 21–1, ¶ 3; *see also* Dkt. 18–2 at 30–33.)[1] Hester responded that a consultant had looked into the issue and determined that MBA employees were exempt. (Dkt. 18–2 at 30–33.)

"Shortly after speaking to the Washington State Department of Labor and Industries [ (L & I) ] about overtime requirements[ ]" (Dkt. 21–1, ¶ 4),[2] plaintiff sent an e-mail, on April 11, 2007, to Hester and Rick Miller, Chief Operating Officer of MBA, stating:

> It seems from the Washington state Labor and Industries (L & I) documents on their website that we may be operating outside the law by having all our employees exempt.

Perhaps I am not interpreting what I see there correctly but it seems that even some of our Directors may not be "exempt" according to L & I.

Could you please clarify for me why all of our employees are categorized as exempt?

(Dkt. 20, Ex. A.) Hester replied: "Cecil—you aren't the first person to question this. We questioned it ourselves. However, we worked with a couple of HR specialists who confirmed that all of our staff would be considered administrative and exempt. Please see attached document." (*Id.*) A subsequent e-mail from plaintiff on that same date stated:

> In my role as director I have a responsibility to our employees and to our company. In light of what I have learned, I believe we as an organization may be exposed to the harsh realities of our legal system. I also know that I may very well be wrong as I am not an HR specialist.

> The portion of the document I mentioned that directly relates to the majority of our workers is:

> [Excerpt omitted]

> According to L & I, the rule that affords the worker the most protection is the one that remains primary. Under the above-stated rules, a director who does not direct the activities at least two full time employees cannot be considered exempt. Therefore workers who have a manual-labor component in their responsibilities are non-exempt.

---

1. Defendant disputes this assertion (*see* Dkts. 23 & 24), but accepts it as true for the purposes of its motion.

2. Plaintiff raised the assertion that he contacted L & I in his opposition to defendant's motion and in a supportive declaration. (Dkts. 21 & 21–1.) Defendant averred in reply that plaintiff had not previously alleged he contacted L & I, instead indicating only that he reviewed materials publically available on L & I's website. (Dkts. 23 & 24.) The Court accepts plaintiff's assertion as to his contact with L & I as true for the purpose of considering defendant's motion.

I am attaching a copy of the document for your review.

(*Id.*)

Plaintiff subsequently spoke to Hester about this issue "[a] couple of times[,]" and she reiterated the response described above. (*Id.* Dkt. 18–2 at 36.) In one of those conversations, also on April 11, 2007, plaintiff specifically identified Sales & Marketing Coordinator Andrea Morrison as an employee who had complained to him about the issue of overtime pay. (Dkt. 21–1, ¶ 4; *see also* Dkt. 18–2, Ex. A at 37, 59.) Plaintiff also, in a May 2007 e-mail to Hester and Miller, expressed concern that an incident in which an individual associated with MBA had declared to others that plaintiff was about to be let go was a result of his having asked the question " 'why are all our employees exempt?' " (Dkt. 18–3, Ex. I.) Hester replied: "Cecil—I'm sorry to hear about Bob's comments. Your question regarding exempt vs. nonexempt is a fair question which I hope we answered satisfactorily to you. The question does not have any bearing on your employment here. To my knowledge everyone seems happy with your work." (*Id.*)

Plaintiff testified that he raised the issue of overtime pay with MBA based on complaints received from employees because he "needed to make sure that their complaints were addressed through HR[,]" and it was his "responsibility as the boss of someone that came to [him] and complained, that [he] should make that complaint in writing ... to HR." (Dkt. 18–2, Ex. A at 35–36.) He concedes that reporting employee complaints to human resources was his responsibility as an MBA director and supervisor. (*Id.* at 36–37.) He maintains, however, that his "main purpose" in taking the above-described actions "was to correct what [he] thought was

MBA's unlawful practice of not paying overtime to some employees of MBA including Andrea who reported to [him]." (Dkt. 21–1, ¶ 5.)

Plaintiff left his employment with MBA in February 2009. (Dkt. 18–2 at 39.) He concedes that, outside of the above-described conversations and e-mails, he did not raise the issue of overtime pay with anyone at MBA at any time prior to leaving or at the time he left his employment. (*Id.* at 39–40.) [3]

## DISCUSSION

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

Genuine issues of material fact that preclude summary judgment are "disputes over facts that might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding a summary judgment motion, the court must view all facts and inferences therefrom in the light most favorable to the nonmoving party. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995). "[A] party opposing a properly supported motion for summary

---

**3.** Because the Court finds plaintiff's claims subject to dismissal based on the discrete issue of whether he engaged in protected activity under § 215(a)(3), it includes herein only the facts and arguments associated with this issue.

judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505 (citing Fed.R.Civ.P. 56(e)).

### A. Section 215(a)(3)

Plaintiff alleges MBA unlawfully retaliated against him in violation of FLSA provision § 215(a)(3). That provision makes it unlawful for an employer:

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3).

■ As a remedial statute, the FLSA is construed broadly. *Lambert v. Ackerley,* 180 F.3d 997, 1003 (9th Cir.1999) (quoting *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 597, 64 S.Ct. 698, 88 L.Ed. 949 (1944)). Its anti-relation provision is intended "to provide an incentive for employees to report wage and hour violations by their employers[,]" and "to ensure that employees are not compelled to risk their jobs in order to assert their wage and hour rights under the Act." *Id.* at 1003–04 (citing *Mitchell v. Robert DeMario Jewelry, Inc.,* 361 U.S. 288, 292–93, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960)). The Ninth Circuit Court of Appeals has, therefore, held that, "in order for the anti-retaliation provision to ensure that 'fear of economic retaliation' not 'operate to induce aggrieved employees quietly to accept substandard conditions,' it must protect employees who complain about violations to their employers, as well as employees who turn to the Labor Department or the courts for a remedy." *Id.* at 1004 (quoting *Mitchell,* 361 U.S. at 292, 80 S.Ct. 332).

■ To prevail on a retaliation claim under the FLSA, a plaintiff must first make a prima facie showing that: (1) he engaged in activity protected by the FLSA; (2) defendant took an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action. *Conner v. Schnuck Mkts.,* 121 F.3d 1390, 1394 (10th Cir.1997) (applying burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to FLSA retaliation cases). *Cf. Raad v. Fairbanks N. Star Borough Sch. Dist.,* 323 F.3d 1185, 1195–97 (9th Cir.2003) (applying same to Title VII retaliation claim). If a plaintiff meets this standard, the burden shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse action. *Conner,* 121 F.3d at 1394. The burden thereafter shifts back to the plaintiff to demonstrate that the employer's proffered reason is pretextual. *Id.*

Defendant argues in its motion that plaintiff fails at every level, that there is no material factual dispute, and that these claims should be dismissed on summary judgment. As argued by defendant, and discussed below, this case may be resolved on summary judgment solely with consideration of whether plaintiff engaged in "protected activity" under § 215(a)(3).

### B. Protected Activity Under Section 215(a)(3)

In arguing plaintiff's inability to make out the first requirement of his prima facie case—that he engaged in activity protected by the FLSA—defendant relies on a series of cases holding that protected activity in a FLSA retaliation case cannot be satisfied without "stepping outside" the

employee's professional role and taking a role "adverse" to the company:

> In order to engage in protected activity under § 215(a)(3), the employee must step outside his or her role of representing the company and either file (or threaten to file) an action adverse to the employer, actively assist other employees in asserting FLSA rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA.

*McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1486–87 (10th Cir.1996).

> In *McKenzie,* the Tenth Circuit found:
> Here, McKenzie never crossed the line from being an employee merely performing her job as personnel director to an employee lodging a personal complaint about the wage and hour practices of her employer and asserting a right adverse to the company. McKenzie did not initiate a FLSA claim against the company on her own behalf or on behalf of anyone else. Rather, in her capacity as personnel manager, she informed the company that it was at risk of claims that might be instituted by others as a result of its alleged FLSA violations.

*Id.* at 1486. The Court pointed to the fact that the employee's job responsibilities included "participating in wage and hour issues[ ]" and the absence of any evidence suggesting she was "asserting any rights under the FLSA or that she took any action adverse to the company[.]" *Id.* at 1487. It found that the record established her involvement in the issue was "completely consistent with her duties as personnel director for the company to evaluate wage and hour issues and to assist the company in complying with its obligations under the FLSA." *Id.* (affirming judgment as a matter of law on this issue). *Cf. Conner,* 121 F.3d at 1394 (finding that a food clerk engaged in protected activity by reporting overtime violations because the employee had "no management responsibilities regarding the calculation of overtime wages.")

Other Circuit Courts have reached similar conclusions. In *Claudio–Gotay v. Becton Dickinson Caribe, Ltd.,* 375 F.3d 99, 101–03 (1st Cir.2004), the First Circuit concluded that a supervisory employee who informed an employer as to potential FLSA violations, after reviewing invoices documenting his subordinates' hours and corresponding pay, did not engage in protected activity because the action was taken in furtherance of his job responsibilities. *See also id.* (also finding that the employee's refusal to subsequently sign invoices as directed did not constitute the filing of a complaint under the FLSA given that it "occurred after the whistle had been blown and after corrective actions were being taken to remedy any FLSA violations[.]") In *Hagan v. Echostar Satellite, L.L.C.,* 529 F.3d 617, 623, 629–30 (5th Cir.2008), the Fifth Circuit found a field service manager who personally objected to his field technicians' schedule change because of a potential decrease in overtime pay, and who passed along his technicians' question regarding the legality of the change to the company's Human Resources department, did not step outside his role as a manager. The Court found nothing to suggest that the manager was "personally advocating on behalf of his technicians' statutory rights[,]" or that he had taken a position adverse to the company on this issue. *Id.* at 629–30.

The Fifth Circuit's decision in *Hagan* contains reasoning for the rule that the protected activity element of a FLSA retaliation claim requires an employee to step outside the employee's professional role and take on a role adverse to the company:

This rule is eminently sensible for management employees like Hagan, because a part of any management position often is acting as an intermediary between the manager's subordinates and the manager's own superiors. The role necessarily involves being mindful of the needs and concerns of both sides and appropriately expressing them. Voicing each side's concerns is not only *not* adverse to the company's interests, it is exactly what the company *expects* of a manager.

If we did not require an employee to "step outside the role" or otherwise make clear to the employer that the employee was taking a position adverse to the employer, nearly every activity in the normal course of a manager's job would potentially be protected activity under Section 215(a)(3). An otherwise typical at-will employment relationship could quickly degrade into a litigation minefield, with whole groups of employees—management employees, human resources employees, and legal employees, to name a few—being difficult to discharge without fear of a lawsuit. For those reasons, we agree that an employee must do something outside of his or her job role in order to signal to the employer that he or she is engaging [in] protected activity under Section 215(a)(3).

*Id.* at 628.

■ In this case, defendant avers that plaintiff did not engage in protected activity because the concern over whether MBA employees were exempt or nonexempt fell within plaintiff's job responsibilities as a director at MBA, and because he never took on a role adverse to the company. Defendant points to plaintiff's testimony as supporting the conclusion that it was his role and responsibility as a company director to raise the issue of exempt/nonexempt status. (Dkt. 18–2 at 34–37.) Defendant further points to plaintiff's April

11, 2007 e-mails as supporting the conclusion that he was raising his concerns in his capacity as a MBA director, including his statement: "In my role as director I have a responsibility to our employees and to our company." (Dkt. 20, Ex. A.) Plaintiff also stated in his e-mails that "*we* may be operating outside the law[ ]" and asked that Hester clarify why "*our* employees are categorized as exempt[.]" (*Id.*; emphasis added.) He additionally acknowledged that he knew he "may very well be wrong" as he was "not an HR specialist." (*Id.*) Defendant argues that plaintiff's interests were clearly aligned with MBA, not against it, and that, as a result, his retaliation claim fails as a matter of law for failure to prove he engaged in protected activity.

Plaintiff maintains he engaged in protected activity when he (1) contacted L & I to find out whether MBA employees were supposed to be paid overtime, (2) made written complaint to MBA on April 11, 2007, (3) orally complained in 2006, and (4) presented Hester with a comparison of federal and state laws he obtained from L & I. While conceding his overall responsibilities included flagging employment issues, such as wage and hour issues, plaintiff avers he went far beyond the mere performance of his duties through his repeated complaints and advocacy on behalf of MBA employees.

In support of his position, plaintiff points to the Ninth Circuit's decision in *Lambert.* In that case, the Court concluded that the following circumstances constituted the filing of a complaint within the meaning of § 215(a)(3):

[The plaintiffs] not only complained orally to their employers [sic] about the failure to pay adequate overtime wages, and specifically alleged a violation of the FLSA, they also contacted the Department of Labor (which informed them

that their employer's practices were illegal), hired an attorney to assist them with their claim, and notified their employer in writing of the specific FLSA violation they were alleging.

*Lambert,* 180 F.3d at 1007. The Court found that, while "not all amorphous expressions of discontent related to wages and hours constitute complaints filed within the meaning of § 215(a)(3)[,]" the actions taken by the plaintiffs in that case "were in no way amorphous[.]" *Id.* It further stated that, while the above facts "unquestionably amount[ed] to the filing of a complaint within the meaning of § 215(a)(3), less formal and detailed communications also fit the statutory definition." *Id.* The Court added:

> Although we need not, and indeed could not, describe the minimum specificity with which an employee must assert an alleged FLSA violation in order to find protection under § 215(a)(3)—and we agree with the First Circuit that such questions are to be resolved as a matter of factual analysis on a case-by-case basis—it is clear that so long as an employee communicates the substance of his allegations to the employer (e.g., that the employer has failed to pay adequate overtime, or has failed to pay the minimum wage), he is protected by § 215(a)(3).

*Id.* at 1007–08.

Plaintiff distinguishes some of the case law relied on by defendant. He notes that *McKenzie,* 94 F.3d 1478, involved a personnel director whose position, by definition, was devoted to resolving personnel and employment issues, and that that director did not initiate a claim on behalf of herself or others, or contact any overtime enforcement agency. He also points to the Tenth Circuit's statement in that case that protected activities include "actively assist[ing] other employees in asserting FLSA rights, or otherwise engage[ing] in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA." *Id.* at 1486–87. Plaintiff inaccurately reads *Claudio–Gotay,* 375 F.3d 99, as holding that an employee engaged in protected activity in assisting other employees in asserting their FLSA rights. In fact, as described above, the First Circuit in *Claudio–Gotay* found that the employee did *not* engage in protected activity because the action was taken in furtherance of his job responsibilities, and found the refusal to obey an order did not constitute the filing of a complaint because it occurred after the employee complaint and after corrective actions were taken. *Id.* at 102–03.

Plaintiff also addresses two unpublished district court cases pointed to by defendant. He distinguishes a case from the Eastern District of Washington, discussed below, as not involving contact with an outside enforcement agency or the offering of an opinion for the benefit of any specific employee. *See Stein v. Rousseau,* No. CV–05–264–FVS, 2006 WL 2263340, 2006 U.S. Dist. LEXIS 54939 (E.D.Wash. Aug. 8, 2006). He also distinguishes the District of Oregon's decision in *Clemons v. Nike, Inc.,* No. 06–1209–KI, 2007 WL 2890972 at *9–10, 2007 U.S. Dist. LEXIS 73236 at *24–25 (D.Or. Sept. 28, 2007), as pursuant to the Americans with Disabilities Act and involving nothing more than an employee, in that case an Employee Relations Specialist, simply telling management that it might be violating the ADA.

It does not appear that the Ninth Circuit has addressed the issue of whether an employee must step outside his or her professional role and take a role adverse to the employer in order to engage in protected activity under § 215(a)(3). The Eastern District of Washington discussed this issue, the existing Circuit case law, and the absence of a Ninth Circuit ruling

in *Stein v. Rousseau*, 2006 WL 2263340, 2006 U.S. Dist. LEXIS 54939. The Court found nothing in *Lambert* to suggest a broader interpretation of the FLSA in the Ninth Circuit, stating that, in fact, the Ninth Circuit had agreed with its sister circuits in, for example, acknowledging that " '[t]here is a point at which an employee's concerns and comments are too generalized and informal to constitute complaints that are filed with an employer within the meaning of the [statute].' " *Id.* at *4, 2006 U.S. Dist. LEXIS 54939 at *10–11 (quoting *Lambert*, 180 F.3d at 1007 (quoting *Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 44 (1st Cir.1999))) (internal punctuation and citation omitted). The Court noted that the Ninth Circuit had "never held that anything less than a concrete request for compensation is protected[,]" and found the conclusion "that § 215(a)(3) is triggered only where an employee asserts statutory rights by taking some action adverse to his company ... implicit in *Lambert's* rationale, holding, and dicta." *Id.* at *4, 2006 U.S. Dist. LEXIS 54939 at *11–12. In this latter respect, the Court pointed to the fact that the Ninth Circuit was "strongly influenced" by " 'the need to prevent employees' fear of economic retaliation for *voicing grievances* [,]' " as well as the fact that *Lambert* involved an explicit demand for compensation. *Id.* (quoting *Lambert*, 180 F.3d at 1007–08) (emphasis added). The Court opined that the Ninth Circuit was likely to follow the lead of the First and Tenth Circuits. *Id.* at *4, 2006 U.S. Dist. LEXIS 54939 at *12.

Turning to the facts of that case, the Court in *Stein* concluded that a general manager's statements to a company owner as to potential liability for overtime did not constitute a complaint within the meaning of § 215(a)(3) where the manager "did not assert his, or anyone else's, right to compensation for overtime[,]" and, instead, "simply warned" his employer that it "might face exposure to liability under the FLSA as a result of its former overtime-compensation policy." *Id.* at *2, 2006 U.S. Dist. LEXIS 54939 at *6. The Court reasoned that the manager's comments in regard to potential liability would "do little to advance the purpose for which the FLSA was created[,]" and found they were "offered ... for the benefit of the company as a whole in his capacity as one of the company's managers[,]" rather than made in a capacity adverse to his employer. *Id.* at *5, 2006 U.S. Dist. LEXIS 54939 at *13–14. It found "telling" the employee's comment: " '[W]e've got a big problem here.' " *Id.* at *5, 2006 U.S. Dist. LEXIS 54939 at *14 (emphasis in original). The Court dismissed on summary judgment plaintiff's FLSA claims due to the lack of participation in protected activity. *Id.* at *5–6, 2006 U.S. Dist. LEXIS 54939 at *14–15.

Plaintiff's case is clearly distinguishable from *Lambert*, first and foremost, in that case did not involve employees with managerial or other relevant responsibilities. *See Lambert*, 180 F.3d at 1001 (addressing FLSA retaliation claim of six former ticket sales agents of the Seattle SuperSonics). Notably, while plaintiff identifies various factual differences with the cases relied on by defendant in regard to whether plaintiff was acting outside his professional role and taking on a role adverse to the company, he does not argue that these considerations do not apply. (*See* Dkt. 21 at 7–8.) The Court finds the reasoning of the Circuit Courts to have considered the issue, as well as the decision in *Stein*, persuasive. It, therefore, considers whether plaintiff establishes he engaged in protected activity by stepping outside his professional role and taking on a role adverse to MBA. *Hagan*, 529 F.3d at 627–30; *Claudio–Gotay*, 375 F.3d at 101–03; *McKenzie*, 94 F.3d at 1486–87; *Stein*, 2006 WL 2263340

at *3–5, 2006 U.S. Dist. LEXIS 54939 at *10–14.

■ The mere fact that plaintiff raised objections on behalf of his subordinates does not establish protected activity. *See, e.g., Hagan*, 529 F.3d at 623, 629–30 (finding field service manager who personally objected on behalf of his field technicians in relation to overtime pay and who passed along his technicians' question regarding the legality of the change to the company's Human Resources department did not step outside his role as a manager). The relevant question is, instead, whether plaintiff was acting outside of his professional role and "personally advocating on behalf of his" subordinates' rights, and had taken on a position adverse to MBA. *Id.*

Plaintiff's testimony can be read to support his claim that he was, in part, acting on his subordinates' behalf, and his 2007 e-mails reflect his disagreement with MBA's position on the issue of whether it had properly classified its employees as exempt. (*See* Dkt. 18–2, Ex. A and Dkt. 20, Ex. A.) However, even assuming plaintiff took these steps at the bequest and on behalf of one or more MBA employees, he concedes that doing so fell within his managerial responsibilities. That his "main purpose" was to correct what he perceived to be an unlawful practice in relation to MBA employees, including one of his specifically identified direct reports, does not necessarily establish either that he stepped outside of his role or was clearly taking a position adverse to the company. As argued by defendant, the language in plaintiff's 2007 e-mails—including his use of the inclusive terms "we" and "our[,]" and his explanation that he had "a responsibility to our employees and to our company" and believed the MBA might be exposed to legal liability—supports the conclusion that he remained in his professional role, acting on behalf of the company in bringing this issue to

its attention. (Dkt. 20, Ex. A.) The fact that plaintiff acknowledged in his e-mails that he knew he "may very well be wrong" detracts from the contention that he had taken on a position adverse to MBA. (*Id.*)

Plaintiff's vague assertion as to oral discussions with Hester does not reveal sufficient detail to support a contrary conclusion. Nor does the fact that plaintiff provided a comparison of federal and state laws from L & I in his 2007 e-mails demonstrate that he had taken on a role as an advocate for his subordinates' rights and as an adversary to MBA. A plain reading of the e-mails supports the conclusion that plaintiff took the federal and state law comparison from L & I's website. (*Id.* (pointing in the first e-mail to "documents on [L & I's] website" and in the second e-mail pasting a "portion of the document" he had previously mentioned).) There is, in any event, no basis for concluding that the inclusion of this information was for a purpose other than the fulfillment of plaintiff's professional, managerial responsibilities. Indeed, immediately prior to the inclusion of the federal and state law comparison, plaintiff referenced his "role as director" and consequent "responsibility to our employees and to our company[,]" and his concern that "we as an organization may be exposed to the harsh realities of our legal system." (*Id.*)

■ Plaintiff's contact with L & I requires additional consideration. Clearly, contacting L & I as to a potential FLSA violation could be deemed protected activity. *See generally Lambert*, 180 F.3d at 1007 (finding protected activity where employees, *inter alia*, contacted the Department of Labor to inquire as to legality of employer's practices.) *See also, e.g., Daniel v. Winn–Dixie Atlanta, Inc.*, 611 F.Supp. 57, 63 (N.D.Ga.1985) ("[P]laintiff

allegedly not only complained to her employer, but contacted [the Department of Labor], explained her problem, and was advised to demand her rights. A common sense approach, coupled with the prescribed liberal construction, suggests that plaintiff's actions promoted the FLSA's purpose of protecting workers, and § 215(a)(3)'s goals of providing information to federal officials and allowing an employee to assert her rights. To permit her firing for her actions would chill these purposes.")

Yet, as argued by defendant, the mere fact that plaintiff contacted L & I does not suffice to establish a genuine issue of material fact as to whether he engaged in protected activity. Plaintiff provides no detail as to the content of his telephone conversation with L & I. In the opposition to the motion for summary judgment, plaintiff asserts he contacted L & I to find out whether his subordinates and other MBA employees were correctly classified as exempt from the overtime requirements of federal and state laws. (Dkt. 21 at 5–6.) In his declaration, plaintiff states he contacted L & I because he thought MBA's practice was unlawful. (Dkt. 21–1, ¶¶ 4–5.) Neither explanation demonstrates that plaintiff, in making the phone call, had stepped outside of his professional, managerial role and was in some respect "actively assist[ing] other employees in asserting FLSA rights," *McKenzie*, 94 F.3d at 1486–87, or that he otherwise took on a position adverse to MBA. In fact, plaintiff declares that he sent his first April 11, 2007 e-mail "[s]hortly after" he spoke to L & I (*id.*, ¶ 4), and, as discussed above, plaintiff's e-mails on that date contain terms and statements supporting the conclusion that plaintiff was acting on behalf of the company in bringing this issue to MBA's attention.

The case law relied on by plaintiff as supporting the argument that his contact with L & I constitutes protected activity does not alter the Court's conclusion. (*See* Dkt. 21 at 6.) None of those cases involved managerial or supervisory employees. *Lambert*, 180 F.3d at 1001; *Morgan v. Future Ford Sales*, 830 F.Supp. 807, 808–09 (D.Del.1993); *Prewitt v. Factory Motor Parts, Inc.*, 747 F.Supp. 560, 561 (W.D.Mo. 1990); *Daniel*, 611 F.Supp. at 58. Moreover, each case contained factual support for the conclusion that the employee who contacted a governmental agency was, in so doing, pursuing a complaint within the meaning of § 215(a)(3). *See Lambert*, 180 F.3d at 1001, 1007 (plaintiff requested a meeting with employer to discuss overtime wages, telephoned the Department of Labor to request information regarding federal overtime laws, thereafter discussed the issue with her employer and obtained a finding from the Department of Labor that her employer had, in fact, violated the FLSA, and hired an attorney to assist affected employees with their claim); *Morgan*, 830 F.Supp. at 810, 813 (plaintiff contacted Department of Labor to determine whether he and other employees were owed minimum wage for time spent in meetings, was informed that wages were owing for those time periods and that he could file a complaint if he were not so compensated, and confirmed that he had made this contact with multiple managerial employees); *Prewitt*, 747 F.Supp. at 561 ("Plaintiff testified that she called the Wage and Hour Division shortly before her termination regarding Factory Motor's proposed plan to change the salaries and working hours of its employees and that she reported this contact to Factory Motor's general manager."); *Daniel*, 611 F.Supp. at 58, 63 (employee called Department of Labor and inquired as to whether she was being unlawfully denied overtime compensation, was advised that she was within her rights to demand overtime pay and to demand her rights, and proceeded

to inform her employer that she believed she was being underpaid).[4]

In other words, the facts in those cases "were in no way amorphous" and "clearly constitute[d] the filing of a complaint within the meaning of the statute." *Lambert*, 180 F.3d at 1007. The facts, as presented by plaintiff in this case—that he called L & I, sent the above-described e-mails, and engaged in various conversations with Hester—do not lead to the conclusion that plaintiff did "something outside of his . . . job role in order to signal to [his] employer that he . . . [was] engaging [in] protected activity under Section 215(a)(3)." *Hagan*, 529 F.3d at 628. Instead, the Court finds plaintiff's assertion that he took on the role of an advocate for his subordinates' rights and an adversary to MBA ill-supported, contradicted by evidence submitted, and largely conclusory. *See, e.g., Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir.2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment."); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir.2001) (conclusory statements unsupported by facts are insufficient to defeat a motion for summary judgment).

In sum, the Court finds no material factual dispute on the issue of whether plaintiff engaged in protected activity by stepping outside of his professional role and taking on a role adverse to MBA in relation to the issue of overtime pay. The Court concludes that, given plaintiff's failure to make such a showing, he fails to establish that he engaged in protected ac-

tivity under § 215(a)(3). Defendant is, therefore, entitled to summary judgment.

### CONCLUSION

For the reasons described above, the Court finds defendant entitled to summary dismissal of plaintiff's claims. Defendant's motion for summary judgment is, therefore, GRANTED and this case DISMISSED.

---

4. The Court in *Daniel* denied summary judgment upon finding a material factual dispute on the issue of whether the employer was aware of the employee's contact with the Wage and Hour Division of the Department of Labor. 611 F.Supp. at 58, 63. Defendant in this case similarly denies knowledge of plaintiff's contact with L & I (*see* Dkts. 23 &

24), and asserts that, accordingly, plaintiff is unable to establish the third element of his prima facie case—a causal link between the protected activity and the adverse action. Because the Court finds this matter appropriate for dismissal in relation to the first element of plaintiff's prima facie case, it need not and does not consider this argument.